### BOARDMAN v. CLOSE.

1. **Partnership**: WHEN TERMS ARE IN WRITING. The terms of a partnership having been reduced to writing, it is presumed that the written articles contain all the conditions of the partnership. *Levi v. Karrick*, 13 Iowa, 344, distinguished from the present case.

2. ———: SERVICES OF PARTNER: BURDEN OF PROOF. There is an implied obligation resting upon every partner to devote himself, his skill and labor, to the promotion of the common interest, and a partner seeking to recover compensation for his services has the burden to establish facts justifying an exception to the general rule.

*Appeal from Johnson Circuit Court.*

FRIDAY, OCTOBER 20.

ACTION to settle a partnership and adjust the account between the members of the firm under the following article of partnership:

"F. S. Boardman, having now a lease from Close Brothers for the paper mill at Coralville and the power to run it, with certain franchises therein set out, this day assigns the same to Boardman & Co., a firm this day created, composed of F. S. Boardman and S. M. Close, who stipulate as follows:

"The business of said firm shall be the purchase of necessary material, the manufacture of paper, and the sale of the same, with all the incidents thereto. The place of business shall be at Coralville. Said parties are to be, and are, equal partners in said business, furnishing an equal share each of the capital, and sharing equally in the profits. But if at any time either should furnish stock or money in excess of the other, and from his private funds, he shall be entitled to interest on the said excess at the rate of ten per centum per annum, and shall have a first lien on the interest of the other partner as security for such excess. This copartnership shall continue and be in force for the term of four years, unless sooner dissolved by mutual consent."

The partnership was formed in 1870. In March, 1871, F. S. Boardman sold out his interest to the plaintiff, at which

time the name of the firm was changed to S. M. Close & Co., and in August, 1872, S. M. Close sold out his interest to the defendant. On Sept. 1st, 1873, the partnership was dissolved by mutual consent. The principal matter in dispute was whether the plaintiff was entitled to compensation for his services rendered the firm. The cause was referred to a referee, who made a finding of facts and conclusions of law thereon. Upon the coming in of his report the plaintiff filed exceptions thereto, which being overruled the plaintiff appeals.

*Robinson & Patterson*, for appellant.

*Clark & Haddock*, for appellee.

SEEVERS, CH. J.—The exceptions to the report of the referee relate solely to the question whether the plaintiff was entitled to any compensation, over and above his share of the profits as provided in the articles of partnership, for his personal services rendered the firm. The finding of facts in relation thereto, by the referee, is as follows:

" I further find, with regard to the work done by Boardman, that during the time for which compensation is claimed, he was engaged in no other business than that of the firm. He kept the books of account, weighed in stock, weighed stock out, assisted to load and unload cars, assisted to load and unload straw and other stock, at times, from wagons, assisted to bale paper and mark the same for shipment, and perhaps some few other things; and, further, that he drew against consignments, paid bills, paid the hands off, made out bills of goods shipped, and forwarded the same to consignees, received and receipted for freights, etc., and necessarily visited Iowa City quite frequently, for the purpose of attending to such business. Also, that he was not at the mill during said period, on an average, more than half the time, during the usual working time (that is, from 7 A. M. to 6 P. M.), exclusive of the noon recess of one hour.

" I also find that M. T. Close was engaged at his mill in Iowa City, and did but little work of the concern, and that

no fault was ever found about it, or claim for payment made by Boardman, until the dissolution.

"I also find that the entire business done by the firm amounted, in round numbers, to about $30,000 during the time M. T. Close was a member of the firm, to-wit: From about August 6th, 1872, until Sept. 1st, 1873. [The pay claimed by Boardman is $50.00 per month from the firm during that period.]

"Also, that the book shows that, at times, during the sickness or other necessary absence of either of the members of the firm, during the lifetime of S. M. Close, they were in the habit of charging such absentee with loss of time, at the rate of $50.00 per month; but I do not find that such course of dealing was known to M. T. Close until after his purchase."

The evidence before the referee is not before us. Therefore, in determining the question presented, we can only take into consideration the articles of partnership and the finding of facts made by the referee.

In *Levi v. Karrick*, 13 Iowa, 344, the evidence was before the court, and upon that the court determined the partner was

1. PARTNER-SHIP: when terms are in writing.

entitled to compensation. From such evidence the court found and determined that an agreement to pay could be fairly and justly implied from the course of business between the partners. We are unable to come to any such conclusion in the present case. Nothing of the kind can be implied from the articles. Looking alone thereto the implication is the other way.

In *Levi v. Karrick*, *supra*, the terms and conditions of the partnership existed only in parol, and what such terms and condititions were we are not informed. Having in the present case reduced the terms of the partnernship to writing, the strong presumption is that, if any such thing had been contemplated, it would be found in the written agreement. Its absence, therefore, creates the presumption that the parties did not so intend.

The referee finds that during the lifetime of S. M. Close, the partners were in the habit of charging each other for absent time. This is the reverse of paying for services per-

Boardman v. Close.

formed. The defendant, however, had no knowledge even of this fact. As the defendant was absent the most of the time, why did not the plaintiff, during the existence of the partnership, continue the rule previously adopted and charge him for the time he was absent? We do not believe this circumstance has any bearing whatever on the question before us.

The general rule undoubtedly is, " That there is an implied obligation on every partner to exercise due diligence and skill, and to devote his services and labor for the promotion of the common benefit of the concern; it follows that he must do this without reward or compensation, unless it be expressly stipulated for between the partners, as it well may be under peculiar circumstances."

2. ——: services of partner: burden of proof.

It is true, the defendant did but " little work for the concern," and yet, for aught we know, that little may have been just as valuable as that performed by the plaintiff. The plaintiff should prove and establish facts that justify the engrafting an exception on the general rule. The circumstance that no such claim was made until after the dissolution is entitled to some weight, and also the further fact that the plaintiff was not at the mill more than half his time. If, when thus absent, he was engaged in the business of the firm, he should have shown it.

The judgment of the Circuit Court must be

AFFIRMED.