## CHARLES H. LOOMIS v. SULLIVAN ARMSTRONG

*Administrator's accounting—Partnership assets.*

The administrator of a deceased partner is responsible for any money wrongly paid out of the funds which have actually been in his hands officially, and for any allowance voluntarily and freely made by him against the estate without some legal or equitable warrant.

A surviving partner cannot claim compensation from the estate of a deceased partner for his personal services in winding up the business after the partnership has been dissolved by the latter's death, unless it has been agreed that he shall be compensated.

| | |
|---|---|
| 49 | 521 |
| 72 | 556 |
| 49 | 521 |
| 97 | 577 |
| 49 | 521 |
| 113 | 393 |
| 49 | 521 |
| 116 | 165 |
| 49 | 521 |
| 123 | 48 |
| 49 | 521 |
| 124 | 591 |
| 49 | 521 |
| 126 | 158 |
| 49 | 521 |
| 136 | ³154 |
| 49 | 521 |
| 140 | 20 |

The right and duty to wind up the business of a partnership after it has been dissolved by death is an incident of the partnership and rests with the survivor as a result of survivorship.

An administrator cannot retain any profits made out of assets belonging to his decedent's estate and sold by him, though he may have to account for more than he receives if he sells too low. He must at least account for actual proceeds.

In a proceeding by an heir against his father's administrator for an accounting, an inquiry into the widow's pecuniary condition at the time of trial is irrelevant and improper, especially if it tends to injure the heir by raising the inference that he has been benefited out of property to which the widow was entitled.

---

said, and by command and at the request of said defendant, not knowing that said elevator was dangerous and unsafe for such purpose, with due and proper care and skill in that behalf, and in the ordinary performance of his duty in handling said soap, went upon said elevator. ᐧ That at the time he so went upon said elevator, the said elevator was wholly unsafe and dangerous, and was not in complete running order, and would not safely lift or carry two thousand pounds; and that defendant then knew, and from long before then, well knew, and had full means of knowing the same was dangerous, and likely to break and fall down and injure persons when used in the ordinary manner, for the purposes aforesaid, and with a much less weight than two thousand pounds; that it was the duty of said defendant not to so have provided said elevator in said state for the said purpose, but to have properly constructed said elevator, and to have taken care that said elevator was not unsafe and dangerous, but was put up in a proper and safe state for the purposes aforesaid, and would safely lift or carry two thousand pounds; and said duty particularly devolved upon said defendant, in that any unskillful, improper or unworkmanlike construction of the same, or the putting up of the same, so that it would not safely lift or carry two thousand pounds, would be in the use and running of the same imminently dangerous to human life, as defendant well knew. That by reason of the aforesaid insecure, wrongful and improper conduct of said defendant, in not taking care that said elevator was safe and sufficiently and properly constructed for the purposes aforesaid, and the dangerous, insecure and unsafe state of said elevator, the same while being so used as aforesaid, by said plaintiff, in the ordinary manner, and with due and reasonable skill and care, and while the said plaintiff was upon it, and with a weight much less than two thousand pounds, to wit: fourteen hundred pounds, and while said elevator was in the vicinity of one of the upper floors of said building, the said elevator broke, fell and dropped to the lower floor, whereby and by reason whereof the plaintiff had two ribs broken, was injured in his spine, and was otherwise greatly cut, wounded, bruised, maimed and lamed, so as to be unable to perform any service for his employers, or to earn any compensation therefor, for a long space of time, to wit: one month, and was so permanently injured, that though afterwards partially recovering, yet from thence hitherto the said plaintiff, by reason of his inability and inefficiency, occasioned by the injury aforesaid, has been obliged to work for a much less sum than he otherwise could have earned; and will hereafter at all times be obliged in consequence of said injury to work for a much less sum than he otherwise would have been able to earn, and was also obliged to pay out a large sum for medical attendance, and also suffered great pain of body and mind, to wit: in the county aforesaid.

An administrator's right to extra compensation for his services is a question which depends exclusively on the judge's discretion and cannot be left to a jury.

Proceedings to obtain and close an administrator's account are for the purpose of placing on record an exact showing of the assets which he has had and of their disposal, and the resulting balance; and the charges against him must include such sums as the estate has lost through his misconduct or default.

The administrator of a deceased partner in accounting for such assets as consist of the partnership interest, can be charged only with what he actually received or ought to have obtained from the survivor or from other sources, unless losses occurred through his own fault or connivance. But he should also be credited with any proper disposal of such assets by return or otherwise.

An administrator, in accounting, should give, as far as possible, all the separate items of his disbursements.

The party contesting an administrator's account in the probate court may do so either by disputing items of disbursements, or by adding charges, or by showing larger assets. And when the case is closed it should show not only the result, but a detailed statement on both sides of the account as settled, and the controversy on appeal will then be confined to such parts as are disputed, with the right to either party to correct errors or omissions. The practice should conform as nearly as possible to the equity practice of pointing out the real issues.

New issues framed in the circuit court upon an appeal on an administrator's accounting, should be framed on the matters in controversy and be as specific as possible. If submitted to a jury a general verdict should not be taken. Findings upon separate questions of fact that are properly framed may be given such legal or equitable force as is proper. The circuit court, when the case is disposed of, must have the means of stating the account as it should be finally settled.

Error to Newaygo.    Submitted Oct. 18.    Decided Jan. 5.

APPEAL from order upon administrator's accounting. The heir brings error.    Reversed.

*Taggart & Earle* for appellant.

*W. D. Fuller* and *E. L. Gray* for appellee.

CAMPBELL, J.  Loomis, as heir at law of his deceased father Henry Loomis, took measures to compel an accounting from Armstrong the administrator, and in the probate

court for Newaygo a finding was made of a balance due from the administrator of $1454.81, which he was ordered to pay over to the widow and heir equally.

The administrator appealed, and as his sole reason for appeal set up this finding as incorrect, because he claimed there was a balance due himself of $724.31, that being the sum shown by his account as presented there.

The account in the probate court charged the administrator with the receipt—among other things—from William Loomis, who had been a partner of Henry Loomis, of the price of a half interest in a considerable quantity of saw-logs sold by William Loomis after the decease of Henry. It credited the administrator with considerable sums paid to William on claims due to him from the firm; and it charged commissions on all the moneys thus set out as received.

In the circuit court an issue was presented which was confined to the right of Armstrong to recover the balance he claimed, and negativing the balance found against him. This issue was tried by jury, and they rendered a general verdict in Armstrong's favor of $457.86.

On the trial the administrator was allowed to file an entirely new account, leaving out the principal part of the receipts and payments from and to William Loomis,—reducing the assets admitted to $4223.35 instead of $8914.67—a difference of $4691.32. It is not entirely clear how this difference is made up, as the other items do not correspond in all respects in the two accounts. In the circuit as in the probate court, it is evident that proof was introduced and acted on increasing the receipts and cutting down the credits.

As the finding did not, in either court, set out the items of the account as corrected and allowed, we are entirely in the dark on that subject. And, as we suggested on the hearing, the record is for this reason unsatisfactory and incomplete. And as some errors were made which necessarily affected the result, and a reversal becomes necessary on that account, we will first refer to some of these, and then

discuss such questions of practice as appear to have been disregarded.

On this trial, it appears to have been claimed that a large part of the assets and debits had no place in the administration account, because they really were dealings of William Loomis, as surviving partner, in the closing of the partnership business. Passing by, for the present, this particular question, there can be no doubt that, whatever may be the responsibility of the administrator in regard to the disposal of that property, he is responsible for any money wrongfully paid out of the funds which have actually been in his hands officially, and for any allowances voluntarily and freely made against the estate for which there was no legal or equitable warrant. Such an item appears to have been allowed in a sum of $40 a month, credited to William Loomis, for his personal services in the partnership business. It was held in *Heath v. Waters* 40 Mich. 457, that a partner could claim no compensation for services rendered in carrying on firm business, unless agreed on, and that he must be regarded as assuming the risks of disproportionate labor arising from casualty or sickness of other partners. We think the same principle applies to services after dissolution by death of a copartner. The right and duty to wind up the concern in such case is an incident of the partnership and the survivor incurs the duty as a result of his survivorship. This was expressly decided in *Beatty v. Wray* 19 Penn. St. 516, and seems to be recognized doctrine. 1 Pars. Cont. 201, and cases. This made a difference of $360 in the amount allowed to be considered by the jury.

It also appears that Armstrong bought out the interest of William Loomis in lands held in common with Henry Loomis, and then cut off a lot of timber and sold it. The court allowed the jury to get at the amount chargeable for this by allowing its market value to be measured, but at no greater rate than would have been obtained from a sale of the timber if ordered by the court. This latter qualification seems to have been suggested by a supposed necessity

of cutting the timber to save it from decay resulting from fire.

The heir at law claimed that he was entitled to have the administrator charged with all that he actually received from the proceeds of this timber. There can be no doubt he was responsible for this. The rule is elementary that an administrator cannot retain any profits made out of assets sold by him. There may be cases where he may have to account for more than he receives if he sells at improperly low rates. But there is no case in which he can avoid accounting for the actual proceeds.

There was also error in allowing testimony that the widow had no property left at the time of trial. This testimony was introduced in such a way as to favor the inference that the heir at law had been benefited out of the property which she had been possessed of or entitled to. The account set up large payments to her, a part of which the heir insisted belonged to him. The inquiry into her pecuniary condition was entirely irrelevant and improper. And with these surroundings it had an injurious tendency to raise false issues.

It was also error to allow the jury to pass on the right to extra compensation. This is a matter which depends on the judicial discretion of the court, which cannot be delegated to a jury. A similar question was considered in *Gott v. Culp* 45 Mich. 265. We need not now consider how far any case was made for the court itself in favor of such allowance.

Beyond this, in the present state of the record, it might be unsafe to discuss the questions presented. But the peculiar form in which the case comes up is subject to some comment.

The object of obtaining and closing an administrator's account is to place on record an exact showing of the assets which he has had, and of their disposal, and of the resulting balance. And among the charges must be included such amounts, if any, as the estate has lost through his misconduct or default.

In cases like the present, where a portion of the assets consisted of a partnership interest, he could only be properly charged with what he actually received or ought to have obtained from the survivor or from other sources. From the record we cannot ascertain precisely to what extent these assets came under the administrator's control. He seems to have been more or less consulted, and to have had some independent bailment or other agency duties under the survivor, which would not necessarily have given him possession as administrator. If not so possessed, then he could only be accountable for such balance of assets as he received from the survivor, unless losses accrued through his own connivance or fault. It was proper, therefore, to allow the account to be made up on this basis, so long as the heir was allowed to introduce such testimony as he could, or rely on testimony in the case, to add to these items such amounts as had not been put in and were chargeable. But any assets actually received should be charged, and credit given on the other hand for any proper disposal of them by return or otherwise.

It was the duty, also, of the administrator to give whenever possible all the separate items of his disbursements. Putting them in collectively furnishes no means of verification, and in case a part should be disputed or disproved, the resulting statement will fail to show what was so disposed of. Of course there may be cases where accident or other thing may have destroyed the means of fully showing all items. But they should be given as far as possible.

The contesting party may dispute the account either by disputing items of disbursement or adding charges or showing larger assets. When the case is closed in the probate court it should show the state in detail of both sides of the account as settled, as well as the result. When this is done the office of the appeal is narrowed, and the controversy in the appellate court will be practically confined to such parts as are disputed, instead of rambling over the whole field of transactions. Of course it would not always be just to deprive either party of the right to correct errors and omis-

sions. But the practice should as nearly as possible conform to the equity practice of pointing out the real issues. The case of *Hall v. Grovier* 25 Mich. 427, contains a discussion of the proper methods.

Such issues as are made in the circuit court if new ones are there framed, should be framed on the matters in controversy and be as specific as possible. These specific issues may or may not be such as can be properly laid before a jury. But there are few if any cases where it would be competent to allow the jury to give a general verdict. As already intimated questions of compensation are sometimes subject to legal discretion. Questions of fiduciary default or liability are also frequently equitable questions. If the questions of fact are separately and properly framed, the court can, where a jury finds upon them, give the finding such legal or equitable force as may be proper. But a general finding is of no use in such accounting. The circuit court, when the case is disposed of, must have the means of stating the account itself as it should be finally settled.

The controversy in this case seems to have turned as such matters generally turn, on a few items. But it is impossible as the record is made up to determine what was done with any of them. The account on which the administrator rested was not framed until after the trial began, and no new issues were framed under it. The result shows that no one can now tell what view the jury took of the different items.

And as before suggested a jury cannot properly be allowed to give any such general conclusion in such an accounting.

The judgment must be reversed for the improper rulings on testimony. The case must therefore be tried over again. But the issues ought first to be framed so as to narrow the points to those actually in dispute, and if a jury is again resorted to it must be on those issues and not on the general result of the accounting.

The judgment will therefore be reversed with costs and a new trial granted.

The other Justices concurred.