CHARLES H. LOOMIS v. SULLIVAN ARMSTRONG, ADMINIS- TRATOR.

[See 49 Mich. 521.]

*Estates of deceased persons—Copartnership property—Duties of administrator—Purchase from surviving partner— Accounting in probate court—Special questions to jury.*

| 63 | 355 |
|-----|------|
| 64 | 687 |
| 63 | 355 |
| 97 | 580 |
| 63 | 355 |
| 103 | 299 |
| 63 | 355 |
| 113 | 393 |
| 63 | 355 |
| 124 | 592 |
| 63 | 355 |
| 140 | 10 20 |
| 63 | 355 |
| 158 | 7 2 |

1. A copartner died, leaving no *individual* estate, and the firm prop- erty, consisting mainly of pine saw-logs and a lumbering outfit, was inventoried *by*, and one-half of its appraised value charged *to*, his administrator.

   *Held*, that such inventory should only have referred to this as a *partnership* interest, *locating* the property, but without under- taking to give the *items*, as the administrator had nothing to do with this interest, except to see that no *fraud* or *waste* was com- mitted in its management, until the partnership affairs were set- tled by the surviving partner, and the firm debts paid, when, on the delivery to him of the interest of the estate in the residue, his liability for that portion of the estate and its management would commence.

2. An administrator of the estate of a person dying intestate is re- quired to take charge of the personal estate of the deceased, col- lect it in, and convert it into money, so far as is necessary to pay the debts of the deceased, and make proper distribution of the balance to the persons lawfully entitled thereto, and pay any other sums of money to the widow and family of the deceased pending such administration when ordered by the probate court, and when he has done this, and at such other times as the court may require, render an account of his doings to the court.

3. An administrator is required to exercise the *ordinary* prudence,

care, and judgment of men doing the *kind* of business in which the deceased was engaged at *time* of his *death*. It is not the *highest* degree of skill or care, nor the *best* management and judgment, that the law requires, but the care, prudence, and judgment which the man of *fair average* capacity and ability brings to bear in the transaction of his *own* business,—and this furnishes the standard by which the administrator must be governed in the performance of his trust duties.

4. Where an heir asked for an accounting by the administrator of his father's estate during the first year after attaining his majority, and within eight years after the administrator claimed to have made distribution of the estate,—

*Held*, that the estate had not been *closed* in a *legal* manner, and the probate court had jurisdiction of the proceeding for such accounting.

5. Where the *sole* heirs of a deceased person were his widow and an infant son, of whom she was the general guardian,—

*Held*, that it was proper for the administrator to counsel with such guardian, she being the proper person to receive her own and her son's share of the estate.

6. Where, pending the settlement of a solvent copartnership by a surviving partner, the administrator of the deceased partner's estate paid the taxes on an undivided half of certain firm lands,—

*Held*, that the lands were to be regarded, and in all respects treated, as *personal* estate pending such settlement, and that said estate was liable for the payment of one-half of such taxes, and on an accounting with the administrator the heir cannot object to such payment.

7. The matter of *extra* allowance to an administrator for *unusual* services rendered the estate is *discretionary* with the circuit judge on appeal, and evidence of the *general* nature of the services rendered is properly received on the hearing to furnish a basis for the exercise of such statutory discretion.[1]   How. Stat. § 5959.

8. Where, pending the settlement of a partnership by the surviving partner, the administrator of the estate of the deceased copartner purchased of the survivor an undivided half of certain *firm* lands, which had been cut over, and arranged with the guardian of the minor heir of the deceased partner to cut off and dispose of the timber remaining on said lands, it having been so injured by for-

---

[1] In this case the administrator charged in his account the sum of $100 above the *statutory* commissions for services rendered between certain dates, but did not itemize the charge.   On the trial objection was made to any testimony in support of such charge for want of itemization.

est fires as to necessitate its immediate harvesting, all of which action on the part of the administrator was taken in his individual character,—

*Held,* on an accounting with the heir after becoming of age, that no objection could be taken by him to such action, it appearing that the administrator acted in good faith, and for the best interests of the estate.

9. Where on an accounting by an administrator in the circuit court much of the account had to be established by the testimony of witnesses, independent of the *memoranda* made by the administrator, which had been lost,—

*Held,* that the circuit judge had by far the best opportunity of judging of the *credibility* of this testimony, and his finding was accepted as correct.

10. It is proper for the circuit court on an accounting by an administrator to allow amendments and additions to the account presented for settlement, in furtherance of justice, up to the time the matter is finally submitted for decision. No technical rules of pleading should be enforced in these proceedings, and courts should give to the rules of evidence the most liberal construction, in receiving evidence, consistent with justice.

11. The omission of an item of payment in an administrator's account is of no more importance than in any other, where the payment is satisfactorily shown, and the same is true of any other item in the account.

12. Where on an accounting by an administrator in the circuit court an issue was framed, and two special questions submitted to a jury by agreement of the parties, and after the testimony was taken other special questions were submitted on the request of the contestant, and answered by the jury, a portion of which answers were excepted to by the contestant,—

*Held,* that the jury was called into the case to aid the court in passing upon the *two* questions *first* submitted, and, under the circumstances, contestant's questions should not have been submitted, having no place in the case.

13. Special questions can only be submitted to a jury in cases where their verdict is conclusive upon the facts found.[1]

Error to Newaygo. (Fuller, J.) Argued July 20, 1886. Decided October 28, 1886.

Appeal from an administrator's final accounting in probate

---

[1] See *Pigott v. Engle,* 60 Mich. 221 (head-note 2); *Oliver v. Sanborn,* Id. 347 (head-note 7).

court.   Judgment for administrator affirmed.   The facts
are stated in the opinion.

*Taggart & Denison,* for appellant:

Whether partnership lands held as these were are to bo
considered as personalty or realty, the entire *legal* estate
vested in the survivor, and no one else could be regarded as
having any *legal* interest in the assets:  *Bassett v. Miller,* 39
Mich. 133; and payment of taxes assessed on such assets by
the administrator of a deceased partner is purely *voluntary*
and *unauthorized.*

The charge of $100 for special services was not itemized,
hence its allowance was improper, as the contestant could
not tell what would be claimed as its basis:   Cheever, Pro-
bate Law, 206.

Having assumed to act as administrator, Armstrong is es-
topped from denying his representative capacity in the mat-
ter of his cutting and disposing of the timber on the lands
held by him in common with the estate through his purchase
of the surviving partner:   *Damouth v. Klock,* 29 Mich. 296.

The administrator could not become the purchaser of the
timber belonging to the estate:   *Ingerson v. Starkweather,*
Walk. Ch. 346; *Beaubien v. Poupard,* Harr. Ch. 206; *Clute
v. Barron,* 2 Mich. 192; *Ames v. Port Huron Log, etc., Co.,*
11 Id. 139; *Flint & Pere Marquette Ry. Co. v. Dewey,* 14
Id. 477; *Sheldon v. Rice Estate,* 30 Id. 300.

An administrator who sells the property of the estate on
credit, without security, and without any order of the court,
is personally liable for the price he should have received:
*King v. King,* 3 Johns. Ch. 552; *Orcutt v. Orms,* 3 Paige,
459; *Hasbrouck v. Hasbrouck,* 27 N. Y. 182; *Swoyer's Ap-
peal,* 5 Penn. St. 377; *Davis' Appeal,* 14 Id. 371.

When an administrator uses the money of an estate as his
own he should pay interest:   *Jacot v. Emmett,* 11 Paige,
142; *Hall v. Grovier,* 25 Mich. 428.

A surviving partner cannot enter into a *new* contract, not
even to *renew* a partnership note:   1 Pars. Cont. 201; *Myatts
v. Bell,* 41 Ala. 222; *Jenness v. Carleton,* 40 Mich. 346.

Where the inability of an administrator to give the date
and amount of each item in his account arises from his own
negligence, the strict rule should be applied:   *Wellborn v.
Rogers,* 24 Ga. 558; *Harris v. Ely,* 25 N. Y. 138; *Hutchin-
son's Appeal,* 34 Conn. 300; *In re Jones,* 1 Redf. (N. Y.)
263; *Swan v. Wheeler,* 4 Day (Conn.), 137.

*W. D. Fuller,* for the administrator.

SHERWOOD, J.   Prior to December 9, 1863, William and Henry Loomis were partners in the lumber business at Newaygo, in this State.   At that date Henry Loomis died intestate, leaving only one child, Charles H. Loomis, then ten years old, and Ann M. Loomis, his widow.   She afterwards married a Mr. Bement.

On the first of February, 1864, Sullivan Armstrong, the appellee in this case, was duly appointed administrator of Henry Loomis' estate, entered upon the discharge of that trust, and made and filed an inventory, including an undivided half of the partnership property.   Commissioners on claims were duly appointed, and administration of the estate was proceeded with by Armstrong.   The widow was appointed guardian for the minor child.

In 1867 the administrator rendered an account to the widow, showing due to the estate $840.   He deducted $90 for services, and paid the widow the balance,—paid it to her as the guardian of Charles.   This was four years after he was appointed administrator.   The inventory filed shows that when it was taken the deceased left $60 worth of individual property, and that his interest in the partnership with his brother was estimated at about $24,000; that of this amount $1,355 was real estate.

When the son, Charles H. Loomis, became of age, the administrator gave to him a statement of the condition of the estate substantially the same as he had before done to Mrs. Bement.   The young man, however, cited the administrator to appear and account before the judge of probate.   The citation was made returnable on the twelfth day of July, 1875.   The administrator promptly, on the return-day of the citation, filed his account.   Charles H. Loomis appeared to contest the account, and by his attorneys filed nine exceptions to the account.   A hearing was subsequently had

before Probate Judge Barton, of said county, who found by his decree in the matter that there remained in the hands of the administrator belonging to the estate $1,454 81. The decree was entered on the sixth day of March, 1876, from which the administrator appealed to the circuit court for the county of Newaygo. On the appeal an issue was made in the case by the attorneys for the parties, upon which the case was again tried before Judge Brown, who found in the hands of the administrator about $2,900 belonging to the estate. On motion of the administrator these findings were set aside by the learned judge, and a new trial granted. The new trial was had before Judge Russell, upon an amended account, and before a jury. Upon this trial a balance was found due the administrator from the estate of $457.86. An appeal from this decision was taken to this Court, and because of the admission of some improper testimony the judgment was set aside and another trial of the case ordered (see 49 Mich. 521), which has been had before Judge Fuller, resulting in a judgment in favor of the administrator in the sum of $1,147.15, and the court awarded costs to the administrator. Upon this trial two questions were submitted to a jury by consent of counsel for both parties, viz.:

"1. Do you find the payment by the administrator to the widow of the deceased, Ann M. Loomis, of the several items or sums mentioned in the bill of items attached to the account filed herein, and, if not, what sums or items do you find were so paid?

"2. Do you find that, on or about July 1, 1874, Charles H. Loomis, then of full age, looked over with said administrator the account of payments made by him to the widow of said deceased, and, in consideration of the assignment to him by said Armstrong of certain securities representing the proceeds realized from the sale of certain lands belonging to said estate (a portion of which had been set off to the widow as and for her dower), ratified said payments, even if in excess of the amount she was legally entitled to, and thereupon said Armstrong made such assignment, and delivered said securities to said Charles H. Loomis?"

These questions were answered by the jury, in returning their verdict, as follows:

"1.  We, the jury, do find the payment by the administrator to the widow of the deceased, Ann M. Loomis, of the several items and amounts, aggregating the sum of $3,527.42.

"2.  We, the jury, do find that Charles H. Loomis, on or about the first day of July, 1874, he being then of age, did, in consideration of the transfer to him of certain securities by the administrator, ratify the payments made to the widow of the deceased by the administrator, notwithstanding said payments might have been in excess of the amount she was legally entitled to."

The case now comes before us for review under the rulings and findings of Judge Fuller, and the verdict of the jury.

In addition to the facts found by the jury, the circuit judge found the other facts in the case, counsel having requested the same, and also findings upon the law, and, in accordance therewith, stated the account between the administrator and the estate, with the result given.

There are ninety exceptions and assignments of error presented for our consideration.  The most of these are aimed at the various findings.  There are too many.  They should have been condensed.  The number should not have exceeded ten.  The effect of so many is to make an unnecessary amount of work for the Court.  Counsel, however, in their able briefs, have relieved us, to a certain extent, by their admirable arrangement of the subjects presented.

The record contains all the evidence in the case.  It appears that the entire estate, with the exception of less than $100 worth, consisted of partnership property.

The administrator had nothing to do with this interest, except to look after it so far as to see that no waste or fraud was committed in its management, until the surviving partner had settled up the partnership, and paid all its debts, and then turned over to the administrator an equal half of what was left, and then, and not till then, would the administrator be entitled to the possession of the estate's interest

therein, and his liability for that portion of the estate and its management commence.

In making the inventory it should have only referred to this interest as a partnership interest of a certain character, and where located, without undertaking to give the items of property belonging to such partnership, for the reason the administrator has not, and cannot have, control of it until the partnership accounts are settled and the debts paid, and cannot be made liable therefor.

It further appears that the estate of the deceased was solvent.

The law requires, when an administrator is appointed for a person dying intestate, that he shall take charge of all the personal estate of the deceased, collect it in, and convert the same into money, so far as is necessary to pay the debts of the deceased, and make proper distribution of the balance remaining to the persons lawfully entitled thereto, and pay any other sums to the widow and family of the deceased pending his administration which may be ordered or decreed by the probate court, and when he has done this, and at such other times as the court may require, render an account of his doings to the court.

In doing these things the administrator is required to exercise the ordinary prudence, care, and judgment of men doing the kind of business the deceased was engaged in at the time of his death. It is not the highest degree of skill or care, nor the best management and judgment, that the law requires. This would be requiring too much, as will be readily seen, for that would require capacity and ability which would insure success, and is not possessed by more than one-tenth of the persons who engage in business generally. It is the care, prudence, and judgment which the man of fair average capacity and ability brings to bear in the transaction of his own business that furnishes the standard by which the administrator in the performance of his trust duties must be governed.

"The general rule adopted with respect to the liability of executors is founded upon two principles:

"1. That, in order not to deter persons from undertaking these offices, the court is extremely liberal in making every possible allowance, and cautious not to hold executors or administrators liable upon slight grounds.

"2. That care must be taken to guard against an abuse of their trust." Dayt. Surr. 477; *Tebbs v. Carpenter*, 1 Madd. 162.

The record shows, in addition to the findings of fact by the jury, eight by the court, covering eighteen pages. We cannot give any of these findings at length, and shall only refer to them in our discussion of the case.

This proceeding is simply for an accounting in the probate court. Usually this is more important to the administrator than to the heirs, and seems to have been in this case, if the finding of Judge Fuller shall be found correct. If the estate has been properly administered, and the proceeds disposed of according to law, it is of little consequence to those who have received them whether the evidence of that fact is perpetuated by a decree in the probate court or not, while the final settlement and decree is really the administrator's best protection against the claim of heirs as in this case is now made. It appears that the petitioner and heir to this estate asked for this accounting the first year after he became of age, and within eight years after the administrator claims to have made distribution of the estate. I think the court had jurisdiction of the case. The estate had not yet been closed in a legal manner.

Two facts become of the utmost importance in discussing this case. The first is that the widow and son were the only heirs at law of the deceased, and that the widow was made the guardian of the son. Hence it appears that it was very proper for the administrator to counsel with and receive such suggestions as she desired to make. She was the proper person to receive her own, and the distributive share of the estate going to her son.

The first finding of the circuit judge gives the inventory in full. The second finding is to the effect that, at the time the inventory was made, all the partnership property was in the possession and control of the surviving partner, and that the administrator never had any possession thereof. In the fourth finding the court states that the surviving partner closed up the business of the firm in good faith, and paid over what was due to the estate to the administrator. I think these findings are fully warranted from the testimony.

The sixth finding states that the taxes allowed in the administration account were paid upon the partnership lands, being one-half the amount assessed. The lands were to be regarded, and in all respects treated, as personal estate, until the estate was settled, and the company debts were all paid. The copartnership was solvent, and the estate was liable for the payment of half of the taxes, and really the heir was the only one receiving benefit from such payment, and ought not to be heard to complain of the action of the administrator in this regard.

The matter of extra allowance to the administrator for more than the ordinary and usual service was discretionary with the circuit judge, and we find no abuse of that discretion. The circuit judge also, as matter of fact, finds that the administrator has acted in good faith in what he did, and his action has been at all times in the interest of the estate, and that the estate is indebted to him, but he does not allow him interest nor charge him with any. These findings and conclusions are strictly within the province of the court, under the requests made, upon the evidence appearing in the record.

After the settlement of the copartnership I can see no objection to Mr. Armstrong's buying out the surviving partner's interest in the lands held by him and the estate, nor in his making arrangements with the guardian of the minor to work up and sell the timber on the land held in common, so

long as such purchase was not made by Armstrong as administrator. The finding of the circuit judge is to the effect that what Mr. Armstrong did with the land and the timber was done as tenant in common with the estate, and not as administrator, and all that he did was in good faith, and for the best interest of the estate; and I am not able to see why this finding is not entirely correct. At least, there being evidence upon all the subjects, we are not permitted to disturb the finding.

The administrator in this case is evidently not a book-keeper, and the accounting is not as satisfactory as if the items had all been presented as the transactions occurred; but it is shown that, at the time he rendered his statements of account to the widow, he did have a minute of the various items, and that those *memoranda,* whatever they were, have since been lost or destroyed, and much of the accounting had to be established before the circuit judge by the testimony of witnesses, independently of the aid of such *memoranda,* and of the credibility of this testimony certainly he had by far the best opportunity for judging, and he has found against the contestant.

After a careful examination of the testimony in relation to the Loomis contract with Marsh & Foss, existing at the time Henry Loomis died, for sale and delivery of logs, I have discovered no unfair or negligent conduct of that business, and think the contestant has nothing in that matter to complain of, and the court finds that William Loomis actually paid over to the estate more money than the estate was entitled to from William as surviving partner on its settlement.

At one time Armstrong was appointed special guardian for Charles H. Loomis, and there was some question between them, after Charles became of age, whether or not Armstrong had not paid over to the widow more of Henry Loomis' estate than she was legally entitled to; but the court finds, as matter of fact, whatever there was of that was fully settled

with Charles by Armstrong in his accounting as such guardian.

I see nothing in the circumstances of this case requiring any penalty to be paid by the administrator for not sooner rendering his final account to the judge of probate. Neither the widow, the guardian of Charles, nor Charles himself, had ever required it before; neither does it appear that the judge of probate ever desired that he should; and even now it does not appear that the heir will be benefited thereby. If the administrator, in distributing the estate which came into his hands, paid the widow more than he should, it is difficult to see how the heir can be injuriously affected by it, inasmuch as he has settled with the administrator for any such overpayment.

It was sought on the trial to show the particular circumstances which made a case for extra payment to the administrator for his services. This testimony was objected to by contestant's counsel. The evidence, however, was properly received. It was proper to furnish a basis for the court to exercise the discretion vested in him by the statute.

It was also proper for the court to allow amendments and additions to the account presented for settlement, in furtherance of justice, up to the time the matter was finally submitted to the court for decision. No technical rules of pleading should be enforced in these proceedings, and courts should give to the rules of evidence the most liberal construction, in receiving testimony on these accountings of administrators, consistent with justice. *Brown v. Forsche,* 43 Mich. 501; *Loomis v. Armstrong,* 49 Id. 527; *Hilton v. Briggs,* 54 Id. 265.

Besides the special questions hereinbefore referred to, agreed upon between counsel to be submitted to the jury, the counsel for contestant submitted nine others, which the court allowed the jury to answer. The answers to several of these were not satisfactory to counsel for contestant. He excepts to them for various reasons, and now asks that the result in

the case shall be held a mistrial, for the reason that several of the questions were not answered, and some of them only partially.

The jury was called in the case to aid the court only in passing upon two questions, which, at the request of the parties, were submitted to them; and, under these circumstances, no other questions were proper to be submitted to them after the testimony was taken. Special questions can only be submitted to a jury in cases where their verdict is conclusive upon the facts found. The special questions submitted had no legitimate place in the case. The omission of an item of payment in an administrator's account is of no more importance than in any other, where the payment is satisfactorily shown, and the same is true of any other item in the account.

There is in the controversy in this case an item of $360, which contestant claims was allowed to the surviving partner, for closing up the partnership, by the administrator. It is claimed this was for the surviving partner's services. This, if true, was not allowable, and the heir would be entitled to one-half of this sum. I am not, after a careful examination of the record, or rather the testimony, able to say what is the fact upon this subject, or whether the sum, or any part thereof, is contained in the account as stated by the court. The court, however, says it is not, and that, I think, should be final upon that subject. No injury, however, can occur to the heir in accepting this conclusion of the circuit judge, as I think it quite clear, from both the testimony and the findings, that the estate received the benefit of considerably more than its full share of the partnership estate. Under no phase of this case, that I have been able to discover, could this administrator be made liable for any alleged negligent action of the surviving partner in taking poor paper on the sale of partnership property in closing up the business.

I discover no other questions needing discussion, and I

have not been able to see any error in the balance found due the administrator by the circuit judge.

The judgment must be affirmed, with costs.

CAMPBELL, C. J., and CHAMPLIN, J., concurred.

MORSE, J. I cannot agree in the result reached by my Brother SHERWOOD in this case.

I do not think there was any evidence tending to establish several of the findings of the circuit judge, but it will serve no useful purpose to discuss them all.

A reference to a single finding will illustrate the character of some of these findings. The court finds that Armstrong purchased the half interest of William Loomis, the brother of Henry Loomis, in certain lands in Mecosta county, for $250. The estate owned the other half of the lands, and it was finally agreed between Armstrong and the widow that Armstrong should cut said timber, and account to the estate for $250. Not only is there no evidence to support this finding, but Armstrong himself testifies to another and different arrangement:

"When I saw the widow Loomis I told her the condition it was in [the timber], and I asked her what she thought we had better do with it,—whether we had better cut it, or whether we had better let it stand and go to waste. She thought we had better get what we could out of it, and I said to her, 'If you think best, I own an undivided one-half, I will go on and cut it, and will allow the estate one-half;' and she said she thought that was satisfactory; and I went on and cut it."

The finding should have been in accordance with the facts, and Armstrong should have been required to account to the estate, as he agreed to. Even if the facts supported the finding, the law would not allow such an agreement, but would hold the administrator liable to the estate for the profits made by him out of the timber upon that portion of the land owned by the estate. This same point was before this Court in 49 Mich. 521–526. Judge CAMPBELL there says:

"The heir at law claimed that he was entitled to have the administrator charged with all that he actually received from the proceeds of this timber. There can be no doubt he was responsible for this. The rule is elementary that an administrator cannot retain any profits made out of assets sold by him. There may be cases where he may have to account for more than he receives if he sells at improperly low rates. But there is no case in which he can avoid accounting for the actual proceeds."

I cannot perceive by what right or authority the administrator treated with the widow. She owned no interest in the land except her dower right. She could not sell the interest of the estate, or of the heir, to Armstrong. As guardian of Henry Loomis, she could not sell this timber unless she did so at public sale, where the bidding was open to competition. According to Armstrong's story he agreed to work up the timber, and account to the estate for the profits from the half owned by the estate; and this was an arrangement he could make, as the law would require no more of him in any event. But, according to the finding of the judge, he bought the timber from the widow, which he had no right to do. The standing timber could only be sold, under the law, by administrator's sale or by guardian's sale conforming to the statute. If there was any down timber, it was under the control of the administrator, who had not yet closed his trust.

Mr. Justice SHERWOOD excuses this purchase of the timber because Armstrong did not buy the same as administrator, but in his private capacity. Make the most or least of this transaction, and it was, if a sale, as claimed or found by the circuit judge, a sale from Armstrong, administrator, to Armstrong, the individual. If I understand the law, this is the very wrong that the law aims to prohibit and declares to be invalid. No one else had a right to sell it but the administrator, and the administrator could not sell it to himself.

Courts cannot be too careful in protecting the interests of

63 MICH.—24.

minor and orphaned children. They are the wards of the court. No man can be allowed to take advantage of his fiduciary relations for his own advantage at the expense of his trust, and therefore the law will not allow an administrator or a guardian, in any event, to buy in the property of his estate or ward, as such is the only safe rule to prevent fraud or overreaching.

If it was necessary, as claimed by Armstrong, to work up this timber to save it from waste or destruction, it was his plain duty to sell it, or to work it up himself, as he did in connection with his own, and account to the estate for the profits, as he swears he agreed to do. The rights of the infant heir could not be sacrificed or bought in for a mere pittance by Armstrong because his mother consented to it. She had no power or authority to thus consent by virtue of either relationship or guardianship.

There are various items of the administrator's account that should not have been allowed.

It may be, as found by the circuit judge, that Armstrong acted in perfect good faith, but it looks a little singular to me that he should not render an account of his doings to the probate court until compelled to do so by the action of the heir, and, when thus filing it, should bring the estate in debt to him, and, after one or two trials, find additional items in his favor, and amend his account. The longer the litigation lasts, the larger his claim grows.

My Brother SHERWOOD admits that the accounting is not as satisfactory as it ought to be,—as it would have been if the items thereof had all been presented as the transactions occurred.

If Armstrong had complied with the plain provisions of the statute and his bond, and rendered his accounts accordingly, it would not have been necessary to excuse him because he is not a good book-keeper.

By the decision in this case, he is allowed to violate the

statute and his oath of office, and no one suffers thereby except the heir, who could not help himself, or take any steps to save his portion of the estate until he became of age.

Thus, without a specification of items, with, in most cases, only secondary evidence of his claims, the administrator is permitted to recover a large judgment against the estate, when, by his own action, before called to account, he virtually acknowledged that nothing was owing to him.

I do not believe the estate owes him a dollar.

The judgment ought to be reversed.