JOHN A. SENNEFF and D. M. KELLEHER, Appellants, v. MARY L. HEALY, Appellee.

**Attorneys:** JOINT VENTURE: APPORTIONMENT OF FEE. Where attorneys not of the same firm contract to jointly prosecute an action for a portion of the recovery to be divided equally between them, and after a successful trial in the district court one of the attorneys dies and the other prosecutes the appeal and obtains an affirmance, there is a joint venture in the nature of a partnership requiring an equal division of the fee as agreed, without a special allowance to the surviving attorneys for prosecuting the appeal.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT, Judge.

THURSDAY, MARCH 14, 1912.

THIS is a controversy over the distribution of attorney's fees growing out of a contract for a part of the recovery in the case of *Wells v. W. U. Tel. Co.*, which case finally reached this court, and was disposed of by an opinion reported in 144 Iowa, 605. The trial court made a division according to the terms of the contracts entered into between the attorneys, and plaintiffs appeal.—*Affirmed.*

*Maurice O'Connor* and *W. L. Bliss,* for appellants.

*Healy & Healy,* for appellee.

DEEMER, J.—Plaintiffs are attorneys at law, and at the time this controversy arose Senneff lived at Britt, and Kelleher at Ft. Dodge. Thos. D. Healy, now deceased, was also a lawyer living at Ft. Dodge. Plaintiff Senneff was employed by one Wells to prosecute a suit against the Western Union Telegraph Company under an arrangement substantially as follows: "The said plaintiff John A. Senneff undertook the prosecution of a suit to be brought for said A. Judson Wells against the Western Union Telegraph Company and B. G. Lyman, and undertook and agreed to prosecute the said suit to a final determination, and, together with such attorneys as he might select to be associated with him, to render and perform all services required in the trial, preparation thereof, appeals, and all other proceedings in any manner connected with such suit, until the final termination of the litigation. By the terms of the said agreement the said Sennef was to have the right to associate with him such other attorneys as he might select, he informing the said Wells, through his said agent and representative, that he intended associating with him Thomas D. Healy and D. M. Kelleher, and said Senneff and Wells further so agreed in parol that for all services of attorneys they should be paid the equivalent of one-third of the net amount finally recovered or collected in said litigation. The said fee to be so paid to be contingent upon the successful termination of the suit and final recovery and collection of the claim of said Wells for which the suit was to be brought." After making this contract with Wells, Senneff through correspondence and in various interviews, arranged with Kelleher and Healy to assist in the litigation with the understanding among all that each should share equally in the contingent fee in the event of ultimate recovery.

The case in which these attorneys were employed had a somewhat remarkable history. The action was first brought by Schriver Bros. and the Commercial Bank of Britt against the telegraph company in the federal court for the Northern District of Iowa; the law firm of Healy Bros. being the sole attorneys for the plaintiffs therein. Judgment was obtained in the lower court, which was later reversed by the United States Circuit Court of Appeals. Some time during the pendency of this suit, Mr. Kelleher became a partner in the law firm of Healy Bros., and he immediately went to work upon the case. After the reversal the case was again tried in the federal District Court, resulting in a verdict and judgment for plaintiffs. Again the case was appealed, and again there was a reversal. The firms of Healy Bros. and of Healy Bros. & Kelleher did a vast amount of work upon the case, both in preparation for the trial *nisi* and upon the appeals. After the second reversal, the case rested quitely for a time, and during its quiescent stage the firm of Healy Bros. & Kelleher dissolved; Kelleher retiring. About this time Schriver Bros. and the Commercial Bank assigned their claim against the telegraph company to A. Judson Wells, a resident of the state of New York, preliminary to the institution of an action in the state court. Thereupon plaintiff Senneff was employed by Wells to prosecute the action in the local courts under the agreement hitherto set out, and Senneff made the arrangements with Kelleher and Healy as before indicated. Both Kelleher and Healy were very familiar with all the propositions of law and fact involved in the case because of their prior connection with it. It had been thoroughly briefed for the two appeals, and but a single new question remained open, as will be observed from the opinion disposing of the case in this court. The case went to trial in the district court of Webster county, Iowa, at its January, 1908, term, resulting in judgment for Wells in the sum of $12,000. Upon this trial the case was handled largely by Kellcher and Healy because of their familiar-

ity with the record and the legal propositions involved. Thereafter the telegraph company appealed the case to this court, and during the pendency of the appeal Thos. D. Healy died; his death occuring in January of the year 1909. Senneff and Kelleher followed the case to this court, preparing an amended abstract, writing the arguments, and making oral arguments here. As will be noticed, the appeal was unsuccessful, and the judgment was affirmed. On July 30, 1908, the attorneys for Wells filed in the office of the district court of Webster county a notice of an attorney's lien in the sum of $6,000. After the affirmance here, the defendant paid to the clerk of the Webster county district court the sum of $13,420.94 in satisfaction of the judgment against it. The attorney's lien was released by the surviving attorneys, and the entire fee withdrawn from the clerk's office. After the beginning of this suit, which was to settle the rights of the respective attorneys, or their representatives to the fund, one-third of the fee going to all, to wit, $1,491.62 was deposited with the clerk to await the decision of the case. Mary L. Healy, the executrix and sole beneficiary under the will of Thos. D. Healy, deceased, was made a party defendant, and as such she insisted that she was entitled to the full one-third of the contingent fee, pursuant to the arrangement and agreement between the parties, notwithstanding the death of her husband, Thos. D. Healy, during the pendency of the appeal. On the other hand, plaintiffs say that she is not entitled to the whole thereof, but that it should be charged with some offset or be subject to some diminution because of the work done by them after the death of Healy. These are the only questions in the case.

Plaintiffs, who are appellants, insist upon the following propositions:

(1) Where performance of contract for service of an attorney is interrupted by his death, there can be no recovery on the contract or of more than that proportion of the

contract price which the services rendered bears to the whole services contracted for.

(2) Where a contingent fee contract is made for services of two attorneys, and one dies even though the survivor carries on and successfully concludes the litigation with other assistants that he employs, will not entitle a recovery on the original contract. Such contract terminated upon the death of either lawyer whose services were contracted.

(3) There was no partnership relation between the plaintiffs and Thos. D. Healy, deceased. There was therefore no basis to impute an obligation or duty upon the part of the plaintiffs to perform the services contracted to be rendered by Thos. D. Healy for the benefit of his estate.

(4) The award made to the appellee by the lower court was affirmative relief granted on her claim to the full fee, and was unwarranted by the facts.

The main though underlying each of these propositions is that, as Healy died before the case was finally decided upon appeal to this court, neither he nor his representative is entitled to the full one-third of the contingent fee, but that it should be divided in the light of the services performed by plaintiffs after Healy's death. It is true, of course, that these attorneys were not a copartnership; but it is equally clear that after the recovery of the judgment in the trial court, which was before Healy's death, they were jointly interested in that judgment, and each and all desirous of sustaining it for his own individual benefit. There was at all times a joint adventure which did not amount to a partnership; but which is governed in many respects by the rules applicable to partnerships. This thought is well expressed in *Jackson v. Hooper,* 76 N. J. Eq. 185 (74 Atl. 130); *Berry v. Colborn,* 65 W. Va. 493 (64 S. E. 636, 17 Ann. Cas. 1018); *Runkle v. Burrage et al.,* 202 Mass. 89 (88 N. E. 577); *Botsford v. Van Riper* (Nev.) 110 Pac. 705.

What, then, are the respective rights of the parties to a joint adventure such as this under the facts disclosed?

Did the death of Healy after the recovery of the judgment operate to diminish the amount to which he would have been entitled had he lived and presented the case to this court upon appeal? In other words, should the amount which his representative is to receive be diminished because the surviving parties to the joint adventure went ahead with the work, and perhaps did more than they would had all survived and followed the case to the end? Under our statutes joint tenancies with right of survivorship are not favored, and, although there may be joint ownership or ownership in common of personalty, it makes little difference which we call it in this case, the property does not go to the survivors in case of the death of one or more of the joint owners. Parsons in his law of Partnership states the following rules which we regard as applicable to the present controversy:

There is not in partnership the same survivorship as in joint tenancy; but there is a survivorship which is peculiar to partnership. The death of a partner invests the surviving partners with the exclusive right of possession and management of the whole partnership · property and business; but only for the purpose of selling and closing the same. (Section 344.) Until a settlement, the representatives of the deceased can not claim or take any one chattel, or any portion of the merchandise. The survivors are, from the death, trustees for all concerned in the partnership, for the representatives of the deceased, for the creditors of the firm, and for themselves. Their trust is to wind up the concern in the best manner for all interested, and therefore without unnecessary delay; and their powers are such as enable them most effectually to execute that trust. Nor do we know any difference, in this respect, as to the choses in possession and those in action. The surviving partners are held strictly as trustees; and their conduct in discharging their trust is carefully looked after by courts of equity. Thus, like other trustees, they can not sell the property of the firm and buy it themselves; nor, as the converse of this, can they buy from themselves property for the firm. Their trust being to wind up the concern, their powers are commensurate with the trust. Hence, they may collect, compromise, or otherwise arrange

all the debts of the firm; and their receipts, payments, and doings generally in this behalf are valid, if honest, and within the fair scope and purpose of the trust. And, if there be negligence, delay, misconduct, or gross mistake, equity will interfere, and give the proper relief. It is said that the surviving partners are trustees in part for themselves. But while as trustees they have all power and possession they stand as *cestuis que trustent* on the same footing as the others, or, rather, must postpone themselves to the creditors of the firm; and only as to what is left after the creditors are paid do they come in on equal terms with the representatives of the deceased, and with each other. And, if there is not enough to pay the debts in full, then, all being equally liable, they must do nothing to disturb or prevent this equality. (Section 345, Parsons on Partnership, section 346.)

The survivors are not bound to continue the business at all; and would probably be permitted to wind it up quite abruptly if they chose not to engage in new transactions for the firm, or even continue old ones, although the new or the old seemed to promise a much better winding up at the close; . . . but if, by such new business, profit is made, the survivors will be bound to account for this profit as belonging to the firm. And, if no profit or even a loss is made, they must be charged with interest on the funds they use, and the whole loss will be theirs. It seems, however, that, if the survivors carry the business on, and make a profit which is credited to the firm, they may be allowed some compensation for their services, unless the articles of agreement provide otherwise. And a surviving partner may be allowed for his time and expenses, under special circumstances justifying such a claim. Parsons on Partnership, section 346.

In *Ames v. Dowing*, 1 Bradf. (N. Y.) 321, the court said: "Nor can Mr. Hicks charge commissions as surviving partner for the collection of the debts. His legal duty was to collect the assets and wind up the business of the firm, a duty the law imposes on him as an incident to the contract of partnership, and for the performance of which no remuneration is promised or implied. Such a claim

is new to me, and I am not aware that it is supported by precedent or authority." See, also, *Beatty v. Wray*, 19 Pa. 516 (57 Am. Dec. 677); *Brown v. McFarland's Ex'r*, 41 Pa. 129 (80 Am. Dec. 598). In *Newell v. Humphrey*, 37 Vt. 265, compensation was allowed a surviving partner for closing up partly consummated deals; but this was owing to the peculiar facts of the case. Shumaker on Partnership states the law in this wise: "The law imposes upon the surviving partner, as an incident to the contract of partnership, the duty of collecting the assets and winding up the business of the firm, and he is not entitled to compensation therefor, in the absence of an express agreement to that effect." Shumaker on Partnership, page 285. He cites in support of this rule *Ames v. Dowing, supra,* and *Young v. Scoville*, 99 Iowa, 177; *Com. v. Bracken* (Ky.) 32 S. W. 609; *Coakley v. Hazelwood,* (Ky.) 49 S. W. 1067; *Smith v. Smith*, 51 La. Ann. 72 (24 South 618); *Loomis v. Armstrong*, 49 Mich. 521 (14 N. W. 505; Id., 63 Mich. 355, 29 N. W. 867); *Burdick's Cases,* page 606. See, also, to same point, *Denver v. Roane,* 99 U. S. 355, (25 L. Ed. 476); *Comstock v. McDonald,* 126 Mich. 142 (85 N. W. 579).

In *Young-Scoville* case *supra,* we said:

"Consequently it has in many cases been held that the representative of a deceased partner may have the partnership settled and an accounting had as of a date later than the death of his intestate; that to accomplish justice the partnership will be treated as a continuing one, and is to be settled as if there had been no dissolution. Of necessity much depends upon the circumstances of the particular case, and no general rule can be adopted which will fit every controversy of the kind. A court of equity will undertake in this kind of a case to do justice without reference to any settled, fixed, and inflexible rule. Parsons, Partn. (4th Ed.) section 415. See Lindley, Partn. (Ewell's Ed.) 981, 1046; Story Partn. section 343; *Taylor v. Hutchinson,* 66 Va. 544 (18 Am. Rep. 699); *Phillips v. Reeder,* 18 N. J. Eq. 99; *Robinson v. Simmons,* 146 Mass. 167 (15 N. E.

558, 4 Am. St. Rep. 299), and cases therein cited. According to the facts found by the referee, the parties continued the business of the firm after the death of Mrs. Laing just as they had done before her demise. No change whatever was made by reason of her death, and it seems to us entirely just and equitable to hold, under such circumstances, that the affairs of the partnership should be closed as if she had lived, and were now asking the dissolution of the firm, and the settlement of its business.

Appellant has no right to complain of this, for, if he had been so advised, he could have closed up the affairs of the partnership immediately upon the death of Mrs. Laing. As he did not do so, but elected to treat the partnership as continuing, he should be held to account as if it did, in fact, continue. Another potent reason for adopting this rule is found in the fact that the referee reported that it was impossible to determine with any degree of accuracy the financial condition of the firm at the time of the death of Mrs. Laing. We see no error in the rule adopted by the referee as a basis for the accounting. Again, it is contended that the referee and the court were in error in not allowing Scoville compensation for his services in connection with the business after the death of Mrs. Laing. It seems to us that this contention is determined by the rule last above named. If the partnership for the purpose of stating the account between the parties is to be deemed a continuing one, then it is to be treated as if there was in fact no dissolution by death. If this be true, then neither James Laing nor William Scoville can claim anything for their services, as the labor of one was to offset that of the other. It is argued, however, that, as James Laing is not a party to this suit, he is not bound by such rule, and that, if he may in some subsequent suit recover for his services, appellant ought to be allowed for his time and labor. Sufficient it is to say in answer to this argument that we do not think the premises are correct. James Laing and his representative (she now being dead) are clearly estopped from claiming anything for his services rendered to the firm after the death of his wife. There are no facts found by the referee from which an agreement to compensate the appellant for services performed can justly or fairly be inferred, and without any agreement, express or implied, there can be no

allowance to either party for labor and services performed for the partnership. *Morris v. Griffin,* 83 Iowa, 327; *Levi v. Karrick,* 13 Iowa, 344; *Boardman v. Close,* 44 Iowa, 428. It is said, however, that appellant was entitled to compensation as surviving partner for closing up the business. This proposition may well be doubted. *Starr v. Case,* 59 Iowa, 491; Bates, Partn. section 772, and authorities cited. But, concede that it is correct, it is not applicable to this case, for the reason that Scoville did not as surviving partner proceed to wind up the business. On the contrary, he continued it under an arrangement with James Laing, the same as if there had been no dissolution, and there was an implied understanding, at least, that each should offset his services as against the other. Under such circumstances, it is clear that no compensation should be allowed to either. (Bates, Partn. section 774).

In *Starr v. Case,* cited in the Young opinion, we have a case nearest in point to any to which our attention has been called. We there said:

The plaintiffs claimed $80 for services rendered by them in three several suits brought by them since the death of Mr. Patterson for the collection of claims due the firm of Starr, Patterson & Harrison. On motion of the defendants this portion of the petition was stricken out. Of this action of the court the plaintiffs complain. It is conceded that the general rule is that surviving partners are not entitled to compensation for settling the affairs of the partnership. It is claimed, however, that legal services rendered in the prosecution of claims due the partnership constitute an exception to the rule. In support of this position, we are referred to *Vanduzer v. McMillan,* 37 Ga. 300. That was the case of a mercantile partnership. It was held that one of the members of the firm, who was an attorney, might be entitled to compensation for services rendered by himself in the collection of claims due the partnership. In this case the rendering of such services was the business for which the copartnership was formed. We think there is nothing in this case to make it an exception to the general rule.

The *Denver, Roane* case, *supra,* is closely in point.

The other cases cited in Shumaker are more or less in point, and we shall not review them.  We do not say that in no case is a surviving partner or owner of personal property or choses of action entitled to compensation for services rendered.  Much, of course, depends upon the nature of the enterprise, and of the equities of the various parties.  But where there is a joint adventure between attorneys, as here, and the survivors proceed with the case to protect their mutual interests, and carry it through to the end, we think the representative of the deceased co-owner or joint owner is entitled to his share of the profits or proceeds of the joint enterprise without diminution.  Such seems to be the express holding in the *Star* case, *supra*.  There are no equities here which would justify the application of a different rule. In such cases it would not do to ascertain just what services each of the parties performed, and then say that as one failed to do all that he should, either by reason of shirking his responsibilities or by reason of death, that neither he nor his representative should have his full proportion of the recovery as specified in the contract.  Other considerations lead to the same conclusion; but this opinion has already grown so long that we are not justified in amplifying them.

For the reasons already pointed out, it is apparent that the order of the trial court in decreeing defendant entitled to the full amount of the deposit is correct, and it is therefore *affirmed*.