# GRAFTON *v.* PAINE.

PARTNERSHIP; ACCOUNTING; AUDITOR'S REPORT; CONTRACTS.

1. Where after the dissolution of a partnership between A, B and C, lawyers, B voluntarily surrendered his interest in a subsisting contract for fees, and a new contract covering the same subject-matter and with the same client was thereupon entered into by A, who thereafter individually received a sum of money under it for his services, it was *held* in a suit between the parties for an accounting that B was not entitled to any portion of the money so received by A.

2. The findings of a master or auditor concurred in by the court below will on appeal be taken as presumptively correct; *following* Richardson *v.* Van Auken, 5 App. D. C. 209.

3. One partner cannot take any business to himself, for his own exclusive benefit, that is within the general scope of the business of the partnership.

4. Where a partnership firm dissolves by a change in its personnel, the assets of the old firm will not become the property of the new firm without specific and distinct agreement to that effect.

5. One partner in order to be entitled to the benefit of a contract made by his co-partner, must be able, ready and willing to co-operate in the execution of the contract, and equity will not impose the whole burden of performance upon one and give the other an equal share of the profits if that other has disabled or precluded himself by his own act from participating in the duties of the partnership.

No. 455.   Submitted October 8, 1895.   Decided November 20, 1895.

HEARING on an appeal by the defendant from a decree confirming a report of the auditor and directing distribution in a suit for partnership accounting.   *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. H. O. Claughton, Messrs. Shellabarger & Wilson* and *Mr. Lewis E. Payson* for the appellant :

One partner may not, after the dissolution of the partnership, make a new contract in respect to what was at the

time firm business, for his exclusive benefit. As to all unfinished business at the time of the dissolution, there is no dissolution, in the sense that the confidential relations of the partners are at end, and the obligation of *uberrima fides* released. Lindley, Partnership, 303, 307.

On the dissolution of a law firm, in the absence of contrary agreement, either partner may give his attention to, and in the absence of the other, may control any unfinished cases. As to such, they are still partners. *Williams* v. *Whitmore*, 9 Lea, 262.

It is not at all material to the obligation on the part of Paine to exercise *uberrima fides*, either that he was unwilling to be jointly interested with Grafton or that Overton was unwilling that Grafton should have any interest in the new contract. If he was unwilling to be associated with Grafton, which the law imperatively declares he must be if he makes a new contract, he should have let it alone altogether. *Mitchell* v. *Reed*, 61 N. Y. 123 ; *Adler* v. *Fouracre*, 3 Swans. 489.

There is every reason in this case for requiring Paine to exercise *uberrima fides*. The new contract was made while the former contract was alive and while he was prosecuting it as an asset of the firm ; and after making the new contract he continued to prosecute the business just as before. The new contract was as to partnership business, its foundation was the old contract, it was a continuation of the business relations which the client sustained to the firm, and was a benefit resulting to Paine from his connection with the firm. *Featherstonehaugh* v. *Fenwick*, 17 Ves. 298 ; *Clagg* v. *Edmondston*, 8 De G. M. & G. 787 ; *Mitchell* v. *Reed*, 84 N. Y. 556.

*Mr. Walter D. Davidge* and *Mr. Clarence A. Brandenburg* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit in equity for the settlement of partnership accounts.

General Halbert E. Paine and Mr. Benjamin F. Grafton, lawyers, who had previously had some limited connection with each other in the practice of their profession, entered into a partnership on the 30th of April, 1874, for the purpose of the practice of the law in this city—mainly, it would seem, for the prosecution of claims against the United States before the executive departments of the Government, the Court of Claims and the Congress of the United States. It does not appear from the record before us whether their partnership agreement was reduced to writing, or what its terms were. This partnership continued in existence until July 1, 1878.

On June 29, 1878, a new partnership was formed for the same general purpose by Messrs. Paine, Grafton and Story B. Ladd, which was to go into effect, and did in fact go into effect, on July 1, 1878, and was to continue during the pleasure of the parties. The articles of agreement in this case were in writing, and provided that Messrs. Paine and Grafton should each be entitled to two-fifths of the net receipts of the firm, and Mr. Ladd to one-fifth, but that Ladd should be entitled only to one-tenth of the net fees in cases already decided by the courts or by Congress, or in contested election cases already tried. And under this agreement the new firm went into operation.

Very soon afterward—certainly° as early as September 21, 1878—it was anticipated that Gen. Paine would be appointed to the position of Commissioner of Patents under the Government of the United .States ; and so, on the last mentioned day, it was agreed in writing between the three partners, Paine, Grafton and Ladd, that, if this appointment should be made the firm should thereupon be dissolved, and Paine's interest therein should pass to Grafton and Ladd, who were to constitute a new partnership, wherein

Grafton was to have two-thirds and Ladd one-third of the net proceeds of the business.   And it was further provided in the agreement between the parties, that, when Paine should cease to be Commissioner of Patents, the firm of Paine, Grafton and Ladd should be revived, and the business and interests of the firm of Grafton and Ladd should pass to such revived or renewed firm, with the same arrangement as before for the division of profits between the three members ; that is, in the proportion of two-fifths to Paine, two-fifths to Grafton and one-fifth to Ladd.

Paine became Commissioner of Patents on November 1, 1878 ; and in pursuance of the agreement, the firm of Paine, Grafton and Ladd was thereupon immediately dissolved.   On May 1, 1880, Paine ceased to be Commissioner of· Patents ; and on the same day, in pursuance of the same agreement, the firm was renewed.   On March 21, 1882, the renewed firm was dissolved by mutual agreement, Grafton withdrawing, and Paine and Ladd forming a partnership between themselves.

Some misunderstandings seem to have occurred between Paine and Grafton before the dissolution of the partnership of Paine, Grafton and Ladd ; but they do not seem to have led to any serious estrangement between them.   But soon after the death of Grafton, which occurred on July 29, 1883, and the qualification of his widow, the appellant, Virginia A. Grafton, as the executrix of his last will and testament, disputes arose between her and Paine with reference to the yet unsettled affairs of the partnership.   Correspondence and negotiation for several years between them and between their respective attorneys, failed to accommodate their differences, into the details or the merits of which it is unnecessary here to enter.   Suffice it to say that each claimed to be entitled to credits from the other.   At last, on May 26, 1888, upwards of six years after the dissolution of the partnership and nearly five years after the death of Grafton, the present suit for a settlement of the partnership accounts was instituted.   Neither party,

however, makes any complaint of the delay. The bill was filed by Gen. Paine as complainant ; and Mrs. Grafton and Mr. Ladd were made defendants, the latter apparently for the purpose of procuring his testimony in the suit. His interests were with the complainant, of whom he was a son-in-law.

Mrs. Grafton in due time answered the bill, and converted her answer into a cross-bill. To this Gen. Paine filed his reply. Whether Ladd answered either the original bill or the cross-bill, or was served with process to answer either, does not appear from the record before us. No exception was taken by either side, so far as we are advised, to this apparent failure in his regard ; and as he was examined as a witness in the case, and his testimony shows his familiarity with the proceedings, and as the decree was in his favor, as well as in favor, substantially, of the complainant Paine, we presume the proceedings are not to be regarded as defective in consequence of the want of proper parties or of proper proceedings preliminary to a decree. No point is made in this regard in the briefs either by the appellant or by the appellees.

The appellant, Mrs. Grafton, filed a petition for an injunction and the appoiniment of a receiver for the partnership assets, but this was denied.

Finally, on April 28, 1890, the cause was referred by the court below to the auditor, for the purpose of stating an account between the partners of the firm of Paine and Grafton, and the firm of Paine, Grafton and Ladd. By the order of reference the auditor was directed to ascertain and report what fees, if any, had been collected by either of the partners and not accounted for to the others ; and what were the uncollected assets, if any such there were. Considerable testimony, by way of deposition and otherwise, was taken before the auditor or filed with him ; and the cause remained pending in his office for nearly three years. During that time, however, the controversy between the parties became narrowed down to three items of account or of claim, which were the following :

1st. A claim of the executrix of Grafton to two-fifths of a fee received by Paine and Ladd in the matter of a claim against the United States for the loss of a vessel known as the Don Cameron. The amount that was received, it seems, was $2,450, and two-fifths of this would be $980.

2d. A claim of the executrix of Grafton to two-fifths of a fee of $25,000, received by the complainant Paine, for services rendered by him to the Chickasaw Nation of Indians, under a contract made by him with the representatives of that nation on February 12, 1883.

3d. A claim of the complainant Paine to two-fifths of a fee of $5,000, alleged to have been received by Grafton in October, 1878, in payment of services claimed to have been rendered by the firm through the agency of Grafton to the same Chickasaw Nation.

The auditor, on January 24, 1893, made his report. In this he allowed the first and third claims just mentioned and rejected the second. Both sides filed exceptions—Paine and Ladd to the allowance of the first claim, and the executrix to the auditor's refusal to allow her second claim and to his allowance of the claim of the complainant, Paine, to a share of the $5,000 fee. The court, on February 26, 1895, overruled the exceptions of both parties, and decreed that there was due and payable by defendant executrix, who admitted a sufficiency of assets in her hands, to the complainant, Paine, and the defendant, Story B. Ladd, in the proportion of two-thirds to Paine and one-third to Ladd, the sum of $3,000, with interest thereon from November 1, 1878, less the sum of $980, with interest thereon from October 1, 1885.

From this decree all the parties appealed—Paine and Ladd only from so much of it as allowed to the executrix the sum of $980, with interest, on account of the Don Cameron claim. Paine and Ladd, however, have now abandoned their appeal; and the cause is before us only on the appeal of the executrix. But we do not understand that the executrix complains here of the allowance of $980 to her in

the Don Cameron case, although she seems to have claimed a somewhat larger amount before the auditor. The controversy now, therefore, is as to the propriety of the auditor's ruling in reference to his disallowance of the claim of the executrix to a share of a fee of $25,000 received by the complainant, Paine, for services rendered by him to the Chickasaws after the dissolution of the partnership of Paine, Grafton and Ladd, and in reference to a fee of $5,000 claimed to have been received by Grafton during the pendency of the partnership arrangement.

1. With regard to the first of these two disputed items, the substantial facts are these: On January 30, 1879, while the appellee, Paine, was Commissioner of Patents and his connection with the other parties was in abeyance, an agreement was entered into between the Chickasaw Nation on the one side and the firm of Grafton and Ladd on the other, whereby the latter were to prosecute certain claims of the Nation against the United States for a fee of fifteen per centum of the amount that might be recovered. This contract was to expire by its own terms on March 4, 1883. The firm of Grafton and Ladd, and the firm of Paine, Grafton and Ladd, after the return of Paine to the partnership, on May 1, 1880, prosecuted these claims, but without substantial result. On January 30, 1883, when nothing had been effected, and the contract with Grafton and Ladd was shortly to expire by its own limitation, a new contract for the same purpose as the previous one was entered into between the representatives of the Chickasaw Nation and the appellee, Paine, in his individual name; but for some reason it was not approved or acted on by the Department of the Interior as required by law. Subsequently, on February 10, 1883, another contract, entirely similar in its terms, was entered into between the Chickasaw Nation, acting by its governor, and the appellee, Paine, in his own name. This contract, modified so as to limit the amount of fees to be paid to $25,000, was approved by the Department of the Interior on February 14, 1883.

At this time Grafton was in Europe, whither he had gone on business in which, it is said, the firm of Paine, Grafton and Ladd had some interest; and as it appeared that the Department of the Interior would not approve the contract between the Chickasaws and Paine, according to the complainant's testimony, while the previous contract with Grafton and Ladd was in existence, Overton, the governor of the Chickasaw Nation, who was the person negotiating with Paine on behalf of the Chickasaws, and who was then in Washington, telegraphed to Grafton in Europe to request him to surrender the Chickasaw contract which expired the following month. Grafton answered, " I surrender contract." All this occurred nearly twelve months after the dissolution of the firm of Paine, Grafton and Ladd. Grafton's cablegram was dated February 7, 1883.

It was in evidence, also, that Overton came to Paine to request him to enter into the contract; that Paine at first refused; that while he would not again take the case jointly with Grafton, he would not enter into the contract to Grafton's detriment; that Overton stated that the Chickasaw Nation would not again employ Grafton, and they would have to seek another attorney; and that, after a delay of a day or two, Paine finally agreed to enter into the contract which has been mentioned.

Under this new contract, the complainant Paine prosecuted the claim of the Chickasaw Nation and received a fee of $25,000. The defendant executrix claims to be entitled to receive two-fifths of this fee, or the sum of $10,000 on the ground that the unexpired term of the first contract was an asset of the partnership, notwithstanding the previous dissolution of the firm; that by the surrender of that contract Grafton did not intend to surrender his interest in the business of the firm, in respect of which the old contract, as it is claimed, was to be substituted by the new contract, and that this new contract should be held to have been made by Paine for the benefit of the firm of Paine, Grafton and Ladd.

We fully concur in the contention of counsel for the de-

fendant executrix that between partners, as between all persons in fiduciary relations towards each other, the utmost fairness and good faith should obtain. And although the doctrine of the case of *Featherstonehaugh* v. *Fenwick*, 17 Vesey, 298, which was followed by the Commission of Appeals of the State of New York in the case of *Mitchell* v. *Read*, 61 N. Y. 123, has been somewhat limited and qualified by subsequent cases, we would not hesitate to apply the principle of equity there laid down in any case in which its application would be justified by the facts. But we do not think that the facts of the present case warrant its application here.

The partnership of Paine, Grafton and Ladd had long been dissolved; it remained only to wind up its business. Undoubtedly part of that business was the prosecution of the Chickasaw claims under the contract of January 30, 1879. That contract was one of the assets of the firm; and if any fees were realized under it, at any time, by any member of the firm, such fees would inure in equity to the benefit of all the members of the partnership in accordance with their respective interests in the business. But that contract was voluntarily surrendered by Grafton. By such surrender it absolutely came to an end, to all intents and purposes, with the same effect as though the specified term of its limitation had been reached. We presume that, if all the parties had waited for a few weeks, or until after the 4th of March, 1883, when that contract would have expired, and nothing had been accomplished in the meantime, and then Paine and the Chickasaw Nation had entered into the new contract, it could not be contended with reason that they would not have been free to do so without any reference to the pre-existing firm of Paine, Grafton and Ladd. And if this could have been properly done after March 4, 1883, by reason of the expiration of the previous contract on that day, it is very clear that it could have been done with equal propriety at any time previous thereto, if the contract had been terminated by the voluntary act of the parties. When

the contract of February 10, 1883, was executed between Paine and the Chickasaw Nation, the firm of Paine, Grafton and Ladd was not in existence ; and there was no contract in existence between that firm and the Nation, with reference to the business specified in that contract. The connection of the firm with the business in question was then absolutely at an end ; and we see no good reason in law or in morals why, after the dissolution of a partnership and the termination, favorable or unfavorable, of any business affairs in which it has been engaged, the several members of the partnership should not be at liberty to contract with the parties in interest for the further prosecution of such business.

Undoubtedly, if the surrender of the contract of January 30, 1879, had been procured by Paine and Grafton by means of fraud or false representations, a very different question would be presented. It is strenuously urged on behalf of the appellant that there was here some fraud on the part of Paine. We fail to find any proof whatever of it. Nor can we accede to the theory, advanced on behalf of the appellant, that the surrender by Grafton was without consideration, or was made for the purpose of enabling another contract to be executed for the benefit of the firm. We do not understand that any consideration, in the technical sense of that term, is required to justify the surrender and cancellation of a contract, under which nothing has been accomplished and nothing is expected to be accomplished, when both parties are willing to rescind and terminate it. And as to what may have been the motives, inducements, or anticipations of Grafton in agreeing to surrender and cancel the contract, we have no proof, and are not justified in entering into the domain of speculation. Nor is it of any consequence in the absence of all proof that the surrender was in any way influenced or procured by Gen. Paine.

We must hold that the court below and the auditor were right in their rejection of the claim of the appellant as the

executrix of Grafton, to participate in the fee of $25,000 received by Paine under his contract of February 10, 1883.

2. A more difficult question is presented with reference to the claim of the complainant to participate in a fee of $5,000 claimed by him to have been received by Grafton from the Chickasaw Nation in October, 1878, under a contract entered into between B. F. Overton, governor of the Nation and acting for the Nation on the one side, and Grafton on the other, on June 17, 1878.

This contract provided that Grafton should " continue to represent the Nation as attorney and counsel in the matter of resisting all form of territorial government attempted to be erected over the Chickasaw Nation against their will, after the adjournment of the then present session of Congress, until March 4, 1879;" and that he should "also attend, as attorney and counsel, to the matter of resisting all claims against the Chickasaw Nation by or on behalf of John H. B. Latrobe, of Baltimore, Maryland, under any contract or pretended contract with the Chickasaw delegation of 1866." And it was stipulated in the agreement that, in consideration of said services, there should be paid to Grafton at the next session of the Chickasaw legislature the sum of five thousand dollars.

Where, when, or under what circumstances this contract was made, does not appear from the record. Paine and Ladd testified that they knew nothing of the transaction until about the beginning of the year 1886, or more than two years after the death of Grafton, when they were first advised of it, and of the fact of the payment of the money to Grafton. Grafton would seem to have regarded the affair as his own private business. He had kept the original contract at his own house, among his private papers, and had enclosed it in an envelope which he endorsed, " private;" and the document was produced by the executrix in the hearing before the auditor. He made no memorandum of the transaction on the books of the firm, and never accounted to his firm for any portion of the fee.

It was sharply contested, and it is now contested, whether Grafton ever actually received this fee of $5,000; and there is certainly some ground on which to question the fact. The persons connected with the transaction are now all dead, including Grafton himself, Overton and the treasurer of the Chickasaw Nation, who is presumed to have made the payment; and no receipt or voucher for the payment can now be produced, in view of the usage which is claimed to exist in the Chickasaw Nation of burning all their vouchers after the lapse of two years and when they have been audited by a committee of the legislature. But it is shown that the Chickasaw legislature, in October, 1878, which was the session at which, under the contract, the payment of the $5,000 was to be made, passed an act appropriating that sum for that special purpose; and Grafton was in the Indian Territory at the time. There is indirect testimony tending to show that he received the money; and there is proof of circumstances that tend to show the contrary. We do not think it is incumbent upon us to enter into the consideration of the question of fact thus raised, as though we were sitting as a jury. We think that we should be governed by the rule stated in the case of *Richardson* v. *Van Auken*, decided by this court last January, wherein it was said by the Chief Justice, speaking for the court:

" The findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law or the principles of the decree under which he acts, or some important mistake has been made in the evidence, and which has been clearly pointed out and made manifest. This rule has been repeatedly affirmed by the Supreme Court of the United States, and is one of general application in the equity practice, both in the Federal and State courts of the country. *Tilghman* v. *Proctor*, 125 U. S. 136; *Evans* v. *State Bank*, 141 U. S. 107; *Crawford* v. *Neal*, 144 U. S. 585; *Furrer* v. *Ferris*, 145 U. S. 132." (5 App. D. C. 209).

This rule is clearly applicable to the present case: and we

see no reason to reject the finding of the auditor or to disturb the adjudication of the court below upon the question, which is simply a question of fact, whether Grafton received the fee of $5,000, now in controversy, and failed to account for it to his firm.

That Grafton, if he received the money, should be held to accountability to his firm for it, is a proposition that is scarcely controverted on behalf of the appellant. At all events we do not think that it can be sucessfully controverted.

It is very true that it is not unusual in partnerships of lawyers, even when the partnerships are general and embrace all the subjects of legal practice, for some of the partners, with good reason, and with the consent, express or implied, of their copartners, to take some cases exclusively to themselves. But in this class of partnerships, as in all others, in the absence of distinct and satisfactory proof to the contrary, it is the requirement of law that no member of a firm shall take any business to himself, for his own exclusive benefit, that is within the general scope of the business of the partnership. That the subject-matter of the contract of June 17, 1878, was within the scope of the business in which Grafton's firm was at the time engaged, is not sought to be denied ; in fact, it is too plain to be questioned. And the conclusion, therefore, is inevitable that Grafton must be held to have acted in this transaction as trustee for the benefit of his firm.

It is not necessary to infer from this that he is chargeable with intentional fraud. The firm of Paine and Grafton was the firm in existence at the time ; that of Paine, Grafton and Ladd had not yet been formed. It seems probable that the appointment of Paine to the position of Commissioner of Patents, which became a more definite probability in the following September, and which actually occurred on November 1, 1878, was mooted as early as June ; and Grafton no doubt anticipated that, in the change that was to take place, he would probably be left alone ; or that at all events,

the work of representing the Indians during the ensuing winter would devolve mainly upon him, as in fact it did; and we can well understand that on that account he may have deemed himself justified in taking the contract in his own name, and the business as his own exclusive business. But in this he was mistaken; and he must be held to the legal consequences of the partnership arrangement existing at the time.

We think, however, that there was error in the distribution of the money by the auditor, and in the affirmance of his report in that regard by the court below.

The auditor in his report says, "that, at the time of the making of the contract and the enactment of the appropriation act and the issuing of the warrant (for the payment of this sum of $5,000), the plaintiff was a member of the firm of Paine, Grafton and Ladd under the partnership agreement hereinbefore set forth." The use of the word "plaintiff" here we presume is a clerical error: Grafton undoubtedly is meant—although even as to the complainant, Paine, the statement is incorrect. The partnership agreement referred to is the agreement of June 29, 1878, by which the firm of Paine, Grafton and Ladd was constituted, to go into effect two days afterwards, on July 1, 1878. But that firm was not in existence when Grafton's contract in question was made. The firm then in existence was the firm of Paine and Grafton; and to the benefit of the firm of Paine and Grafton, and not to that of the firm of Paine, Grafton and Ladd, did the contract inure.

The time of the receipt of the money by Grafton has no bearing upon the subject in this aspect of it; nor has the time of the rendition of the services for which the contract purports to have been made. The receipt of the money was within the term of the existence of the first firm of Paine, Grafton and Ladd; and the services were rendered mainly, if not exclusively, within the term of the existence of the firm of Grafton and Ladd, after Paine had become Commissioner of Patents. But the time of the execution

of the contract fixed the rights of the firm of Paine and Grafton, then existing ; and the business thereupon became the business of that firm, and must be treated as the property of that firm.

Now the assets of the firm of Paine and Grafton, so far as the record shows, did not pass to the succeeding firm of Paine, Grafton and Ladd, as did those of the latter firm under the agreement of the parties to the firm of Grafton and Ladd, and the assets of this last firm again to the renewed firm of Paine, Grafton and Ladd. It may have been the intention of Paine and Grafton, when on June 29, 1878, they agreed to take Ladd, who had been a clerk in their office, and who continued to a considerable extent to perform services of a clerical character, into partnership with them, and to give him an interest in their business, as it then stood ; and in their memorandum of agreement there is a provision from which something of this kind might possibly be inferred. For there it is specified that Ladd "should be entitled only to one-tenth of the net fees in cases already decided by the courts or by Congress or in contested election cases already tried," while he was to have "one-fifth of all future net receipts " of the firm ; from which provision it might be argued that it was the intention of the parties that Ladd should thereafter participate in the profits of all existing business of Paine and Grafton.

But these gentlemen were all lawyers ; and they were familiar with the plain rule of law that the firm of Paine, Grafton and Ladd was a separate and distinct partnership from the firm of Paine and Grafton, and that the assets of one could not become the property of the other without specific and distinct agreement to that effect. In the absence of all proof of any such agreement, we must hold that the assets of the one did not pass to the other; and that the rights of the firm of Paine and Grafton in and to the contract of June 17, 1878, and in and to the profits that might accrue from that contract, were not transferred to the succeeding firm of Paine, Grafton and Ladd.

It is plain, therefore, that Mr. Ladd was not entitled to any share of this fee of $5,000 ; and that the decree awarding to him a part of it is erroneous. The fee was equally divisible between Paine and Grafton, according to the terms of the partnership existing between them at the time the contract was made.

But here another consideration interposes itself. While the business created by this contract must be regarded in equity as the business of the firm of Paine and Grafton, it does not follow, under the circumstances of this case, that both partners are equally entitled to share in the profits of it. The rule of equity, which will not permit one member of a partnership to gain an advantage for himself at the expense of his copartner, will at the same time require that such copartner, in order to be entitled to the benefit of the contract made by his associate, must be able, ready and willing to co-operate in the execution of the contract ; and a court of chancery will not impose the whole burden of performance upon one, and give the other an equal share of the profits, if that other has disabled or precluded himself · by his own voluntary action from participation in the duties of co-ordinate action required by the law of partnership from all the members of a firm. *Denver* v. *Roane,* 99 U. S. 355 ; *Wilson* v. *Johnstone,* 16 Eq. Ca. Abr. 606.

The greater part, if not all, of the services to be rendered by Grafton, or by the firm of Paine and Grafton, under the contract of June 17, 1878, were to be rendered during the session of Congress beginning on the first Monday of December, 1878, and ending on March 3, 1879. The complainant, Paine, by his acceptance of the position of Commissioner of Patents, on November 1, 1878, precluded himself thereafter and as long as he held that position, which he continued to hold until 1880, from taking any part in the performance of the services required by Grafton's contract. It follows that it would not be equitable that he should receive an equal compensation with Grafton for that period, and that the fee should be apportioned.

While the decree of the court below is in the main correct, we are of opinion that for the error here indicated it must be reversed, with costs ; and that the cause should be remanded to the Supreme Court of the District of Columbia, with directions to ascertain what would be, under the circumstances of this case, a proper apportionment of the fee of $5,000 in question here between the complainant, Paine, and the deceased, Grafton—for which purpose, no doubt, reference will again be had to the auditor of the court, and that court will thereupon take such further proceedings in the cause, according to law, as may be just and proper.

*The decree of the court below is reversed and the cause is remanded for further proceedings in accordance with this opinion. And it is so ordered.*

On behalf of the appellant, a motion for reargument was filed, and on behalf of the appellee, Story B. Ladd, a motion for modification of the decree was filed ; but both motions were overruled.