## DENVER v. ROANE.

1. A., B., and C., who were partners as attorneys and counsellors-at-law, agreed that the general partnership between them should terminate March 18, 1869; that thereafter no new business should be received by the firm, and that any coming to it through the mails should be equitably divided. It was also stipulated that the business then in hand should be closed up as rapidly as possible by them "as partners, under their original terms of association and in the firm name." They agreed, Aug. 13, 1869, that in case of the death of either of them, his heirs or personal representatives should receive one-third of the fees in cases nearly finished, and twenty-five per cent in other partnership cases. A. having died, his executor filed his bill against B. and C. for a discovery, and to recover A.'s share in the fees received by them out of the partnership business which remained unfinished when the firm was dissolved. *Held*, 1. That a court of chancery had jurisdiction to entertain the bill, and power to decree the relief asked so far as the fees had been collected. 2. That the partners having by the agreement of August 13 provided for the division of the fees in case of the death of either of them, the survivors were entitled to no allowance for winding up the business, other than their share of the fees as specified in said agreement.

2. Where an attorney-at-law refuses to act as a partner, or to perform the functions of such in the prosecution of a cause which has been intrusted to his firm, and repudiates his obligations, he is not entitled to any part of the fees subsequently earned by his partners in the cause.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. Albert Pike* for the appellants.

*Mr. Joseph H. Bradley* and *Mr. S. S. Henkle, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The bill filed in this case was not an ordinary bill for the settlement of partnership accounts. James Hughes, the complainant's testator, and James W. Denver and Charles F. Peck were in partnership as attorneys and counsellors-at-law from 1866 until the 18th of March, 1869. On that day it was agreed between them virtually that the general partnership should terminate ; that thereafter no new business should be received in partnership, and that any coming to the firm through the mails should be equitably divided. The agreement, however, contained a stipulation that the business of the firm theretofore received and then in hand should be closed up as rapidly as possible by the members of the firm " as partners, under their original terms of association and in the firm name."

Soon after, on the 13th of August, 1869, a further agreement was made to the effect that in case of the death of any one of the partners, his heirs or personal representatives, or their duly authorized agent, should receive one-third of the fees in cases nearly finished, and twenty-five per cent in other partnership cases. Denver acceded to this second agreement, with the understanding that before any such division should be made, at any time, all partnership obligations should be first satisfied, proposing no new terms, only stating the legal effect. We think this was a closed contract.

It is upon these two agreements the bill is founded. Hughes died on the 21st of October, 1873, and Roane, the executor of his will, has brought the present suit for a discovery, and to recover from the surviving partners the share of the testator in the fees received by them out of the partnership business which remained unfinished when the general partnership was dissolved. A decree having been entered against the defendants in the court below, they have appealed to this court, and have assigned numerous errors. Of most of them it will be necessary to say but little, and, indeed, in regard to most of them there has

been hardly any controversy between the parties during the argument.

It is first insisted by the appellant that the court below had no competency or jurisdiction to entertain a bill for such relief as is prayed for, nor to give such a decree as the court gave, whereby it attempts to settle and close the affairs of a partnership by decreeing specific sums as legally due, and if so demandable at law, and providing for the further continuance of the partnership and collection by virtue of its decree of other like sums until the business of the partnership may end. Such is the first assignment of error. The objection misapprehends the nature of the case made by the bill, overlooks the facts, and does not state accurately the decree. That a bill in equity may be maintained by the personal representatives of a deceased partner against the survivors to compel an account, so far as an account is possible, and for a discovery of the partnership property which came to their hands, is undeniable, and such was the object of the present bill. When the firm was dissolved in March, 1869, for general purposes, the agreement of dissolution stipulated that, as to the business then in hand, the members of the firm should continue partners, and should close it up. What that business was, the present defendants only could know, after the death of Hughes, for it was then left in their hands, and they only could know what fees had been received on account of it. A bill for discovery, as well as for distribution of the fees received, was, therefore, plainly within the province of a court of equity. And as the partners had agreed, as they did by the agreement of August, 1869, to divide those fees in certain proportions, it was quite competent for the court to enforce fulfilment of the contract, so far as was possible when the decree was made. The court did not attempt to make a complete settlement of the affairs of the partnership. In the nature of the case that was impossible. Some of the partnership business remained unfinished, and fees uncertain in amount were yet to be collected. But so far as fees had been collected, the right to immediate distribution was complete. The agreement did not contemplate that all the fees collected might be held by the surviving partners until all the partnership business should be brought to an end, and it was, there-

fore, quite proper to reserve consideration of the fees yet to be received after they shall have been earned.

An objection raised by several other assignments of error (particularly the sixth, seventh, eighth, ninth, eighteenth, and nineteenth) is, in substance, that the court erred in applying to a partnership between lawyers and claim agents the principles of the law of commercial partnerships, in regard to the modes of settlement of the same after the death of a partner, and in regard to the neglect of the business of such a firm by a partner; that by the decree no compensation is allowed to the survivors for carrying on the unfinished business, but that they are required to continue it as well for themselves as for the benefit of the deceased partner's estate. We think these objections to the decree ought not to be sustained. We are not convinced that during his life Hughes (except perhaps in reference to a single case in charge of the firm) was guilty of such neglect, or violation of his duty to his partners, as should deprive him or his personal representative of a right to share in the profits of the partnership. In regard to the work done and the fees received after his death, the parties, by their agreements, prescribed the rule for determining their rights as against each other. Having jointly undertaken the business intrusted to the partnership, all the parties were under obligation to conduct it to the end. This duty they owed to the clients and to each other. And as to the unfinished business remaining with the firm on the eighteenth day of March, 1869, the duty continued. The agreement provided for that. Now, in reference to this duty the law is clear. "As there is an implied obligation on every partner to exercise due diligence and skill, and to devote his services and labors for the promotion of the common benefit of the concern, it follows that he must do it without any rewards or compensation, unless there be an express stipulation for compensation." Story, Partn., sects. 182, 331; *Caldwell* v. *Leiber,* 7 Paige (N. Y.), 483. So it is held that where partnerships are equal, as was true in the present case, and there is no stipulation in the partnership agreement for compensation to a surviving partner for settling up the partnership business, he is entitled to no compensation. *Brown* v. *McFarlam, Executor,* 41 Pa. St. 129; *Beatty* v.

*Wray*, 19 id. 516; *Johnson* v. *Hartshorne*, 52 N. Y. 173. This is the rule in regard to what are commonly called commercial partnerships, and the authorities cited refer to those. There may possibly be some reason for applying a different rule to cases of winding up partnerships between lawyers and other professional men, where the profits of the firm are the result solely of professional skill and labor. No adjudicated cases, however, with which we are acquainted, recognize any such distinction. And in the present case, as we have said, the parties made arrangements for the work and results of work after the death of any of their number. The agreement of Aug. 13, 1869, provided that in case of the death of any partner, one-third of the fees in cases nearly finished, and one-quarter of the fees in other partnership cases, should belong to the representatives of the decedent. Of course, it was contemplated that the surviving partners should finish the work, and that no allowance should be made to them beyond the share of the fees specified in the agreement.

The most important objection to the decree which has been urged by the appellant is that it adjudged to the complainant one-third of the fee collected by the defendants in the case of Gazaway B. Lamar against the United States, including the claim of D. A. Martin. That case was in charge of the firm before the agreement of March 18, 1869, was made, and was commenced in 1868. It was, therefore, one of the cases within the purview of the agreement of Aug. 13, 1869. Hughes's name appeared on the record as attorney and counsel with the appellants for the claimant. But on the 9th of January, 1873, he came into court and asked that his name be erased as such attorney, and that he have leave to withdraw his appearance and sever his connection with the cause. His motion was allowed, and his appearance was then withdrawn. The appellants, however, went on with the case. Briefs were filed for the claimant on the 21st of March and the 22d of April, 1873, the case was argued on the 20th of May, and on the 2d of June next following the court entered a judgment for the claimant. An appeal was then taken to this court, which was subsequently dismissed. After the withdrawal of his appearance and the severance of his connection with the cause, Hughes took no

part in prosecuting the claim, neither in the Court of Claims nor in the Supreme Court, and he paid no attention to it. He quarrelled with Lamar, and about the time he withdrew from the cause he denounced the claim privately to one of the judges of the Court of Claims as altogether without merit and a fraudulent case, or words to that effect, and said that he had decided not to be involved in a case of so scandalous a character, and for so worthless or unworthy a client. In regard to the question of fees in the case, the judge testifies, " he declined to have any interest in the case, or to take fees, because he believed the case was a corrupt one, and not likely to succeed, and that he would not lose much by his withdrawal from the case."

The question presented by this state of facts is whether, inasmuch as the case was afterwards conducted by the appellants to final success, and they received a fee from Lamar, the claimant, Hughes would be entitled to any part of the fee were he now living. If not, certainly his personal representative cannot be now. The recovery of the claim was undertaken by the firm without any agreement respecting fees. By undertaking it the firm and each member of it assumed to conduct the case to a final conclusion, and with all fidelity to the client. Such was the contract of Hughes with Lamar, as completely as if he had been the sole attorney and counsel employed. And as the contract was entire, he could not have abandoned it after a partial performance, and still have held the other party bound. Much less could he have accompanied his abandonment by denouncing the honesty of the claim to one of the judges of the court whose province it was to find the facts and adjudicate upon its merits, and yet claim compensation for services rendered. Such conduct on his part was not merely a renunciation of his engagement to the client. It was a flagrant breach of professional duty. It was not in his power to refuse performance of his part of the implied contract with Lamar, take action hostile to the claim, and still hold Lamar bound. Certainly he could not hold Lamar directly liable. And we do not perceive that, in equity, his situation is any better because he had contracted with the client jointly with his copartners.

If, then, by abandoning the case and denouncing it as fraudulent, he lost all the right which he had against Lamar, how

can he claim from his copartners any of the compensation they obtained for conducting the case after his abandonment to final success? His action was a breach of his duty to those partners, as well as of his obligation to Lamar. By the agreement of copartnership he had undertaken to share in the labor, and to promote the common interests of the firm, and that was the foundation of his right to share in its earnings. It may be that mere neglect of his duty would not have extinguished that right, but a repudiation of his obligations, refusing to act as a partner, or to perform the functions of a partner, is quite a different thing. It may well be considered as a repudiation of the partnership. It was said in *Wilson* v. *Johnstone* (16 Eq. Ca. Abr. 606), "He who acts so as to treat the articles as a nullity as it regards his own obligations, cannot complain if they are so treated for all purposes." It may, therefore, very justly be held that by his action Hughes became a stranger to the case, and repudiated any relation he had previously held to it as a partner in the firm. The partnership ceased as respects that claim. The other partners who continued to attend to the case could charge the client nothing for his services, for as the contract was contingent on success, nothing was due to any partner until success was attained. They certainly could claim nothing for services rendered by him after he severed his connection with the case, for he rendered none; and if he had any just claim on a *quantum meruit* for services rendered before, it was against Lamar, and not against his copartners.

We think, therefore, the decree of the court below was erroneous, in so far as it allowed to the complainant any part of the fee collected from Lamar or from Martin, who owned a part of what was recovered in the Lamar suit.

We discover no other fault in the decree, but for this the case must be sent back for correction.

The decree of the Supreme Court of the District will be reversed, and the record remitted with instructions to enter another decree in conformity with this opinion; and it is

*So ordered.*