G. W. ROTH, Appellant, v. W. D. BOIES, Appellee.

**Partnership:** MODIFICATION OF CONTRACT: DISSOLUTION: EVIDENCE.
1  In an action for an accounting between partners in the practice of law, the evidence is held to support appellant's contention that the partnership continued to a certain date, rather than the contention of appellee that there was a modification of the partnership contract by which appellant was not to share in the firm profits for a time prior to the date of dissolution.

**Same:** MODIFICATION OF CONTRACT: EVIDENCE. The burden is upon
2  the one claiming an oral change or modification of a written partnership contract to establish the same by a fair preponderance of the evidence. Evidence held insufficient to show a modification by which appellant was to have a larger share in the firm profits than originally agreed.

**Same:** INTEREST OF ONE PARTNER IN EARNINGS OF THE OTHER. Upon
3  the establishment of a partnership each partner is entitled to share in the earnings of the other according to the terms of the agreement, unless there has been a modification of the agreement in this respect, or one of the parties has so neglected and abandoned the firm business that an agreement may be implied that he was to have no further share in the earnings.

**Same.** The fact that one member of the firm has a larger experience, does more of the work and his services are more valuable than the other does not entitle him to a larger share of the profits than is provided by the contract.

**Same:** ESTOPPEL. The statement of one member of a firm, in an altercation relating to a division of the profits, that he did not want any of the earnings of the other, will not estop him from claiming his share of the firm profits, even if pleaded as an estoppel.

**Accounting between partners:** EXTRA COMPENSATION FOR SERVICES. In the absence of an agreement to the contrary each member of a firm is required to give the common enterprise all of his time, skill and ability so far as necessary, which is his only compensation; one partner cannot claim extra compensation from the mere fact that he does more work or that his labor is more valuable than that of the other.

**Same:** ATTENTION OF ONE PARTNER TO PRIVATE BUSINESS. A member of a law firm has the right to attend to his own individual business, having no connection with the practice of his profession; and unless the same materially interferes with his duties to the partnership his partner cannot complain.

**Same.** The services of one member of a law firm in looking after the interests of his wife and relatives in probate proceedings are not professional services and earnings in which the firm has an interest.

**Same:** DISSOLUTION: CLOSING UP OF THE BUSINESS: EXTRA COMPENSATION. Ordinarily upon the dissolution of a partnership each member is obligated to assist in whatever work is necessary to close up the business, without other compensation than his share in the profits; but where, as in the dissolution of a law partnership, the circumstances are such as to devolve upon one member the work of completing the business and winding up its affairs, he should be allowed such extra compensation in wages or increased apportionment of profits as is equitable.

**Accounting.** For the facts in relation to the accounting see paragraph four of the opinion.

*Appeal from O'Brien District Court.*— HON. WM. HUTCHINSON, Judge.

SATURDAY, APRIL 11, 1908.

REHEARING DENIED, WEDNESDAY, SEPTEMBER 23, 1908.

ACTION in equity for partnership accounting. The trial court found the defendant indebted to the plaintiff in the sum of $3,554.60, and entered a decree accordingly. Both parties appeal; but the plaintiff, having first perfected his appeal, will be styled appellant in this opinion. *Modified* and *remanded*.

*Milchrist & Scott,* for appellant.

*J. M. Parsons* and *E. C. Herrick,* for appellee.

WEAVER, J.— The appellee was admitted to the practice of law in the year 1881, and during the succeeding period of nine years had been actively engaged in the business of his profession, first at Sanborn, and thereafter at Sheldon, O'Brien county, Iowa. In the year 1890 his business appears to have been well established, and of growing importance. The plaintiff was admitted to the bar in June, 1890, and on July 28th of the same year the parties entered into a written contract of partnership, which writing, omitting caption and signatures, is in the following words:

This agreement witnesseth: That W. D. Boies, party of the first part, and George W. Roth, party of the second part, have this day entered into a contract of partnership for the practice of the law in its various branches at Sheldon, Iowa, under the firm name of Boies & Roth, in the following manner and upon the following conditions: Second party upon the payment of five hundred dollars ($500), the receipt of which is hereby acknowledged, is admitted as a partner having and holding a one-third interest in and to the library, safe, typewriter, and all office fixtures and furniture, and to be entitled in the future to receive one-third of the profits of the business of the firm, first party the other two-thirds; second party to have no interest whatever in first party's present business now pending, or in cases wherein he has been

retained, or collections or other business except such collections as now appear upon the collection register with no cross (x) in the ' No.' column.

Part Second. It is agreed that first party, at his option, at any time may retire from the firm, and in that case second party shall pay him eight hundred dollars ($800) for his interest in the library, office fixtures, and furniture, together with such additional amount as may be agreed upon for property placed in the office by the firm after this date, and in case an agreement cannot be made in relation to the said additions made then the same to be divided according to the interests of the partners; the said amounts to be secured by first mortgage on the whole library, office fixtures and furniture to be paid in equal payments of one and two years at eight per cent., after maturity.

It is further agreed as a partial consideration of ' Part Second ' that in case first party shall retire from the firm that second party shall finish, conclude, and carry on the business of the firm then on hand, and pay to first party one-third of the proceeds arising therefrom. · The amount earned by the firm while in existence is to be divided in proportion to the respective interests of the partners. First party always reserves the option to dispose of his interest to some other lawyer, provided such lawyer shall be acceptable to second party as a partner. In case first party elects to retire from the firm and second party is not willing to perform the conditions of the contract in relation to the purchase of first party's interest as above set forth, then first party shall have the right to pay the second party the $500.00 paid by him to enter the firm, and second party shall retire therefrom, and the partnership stand dissolved.

On April 27, 1903, this action was begun by the appellant, who alleges that said partnership continued until June 1, 1901, when it was dissolved by mutual consent, and that during the entire period of said partnership the greater part of its earnings and income had been paid to and received by the appellee, by whom no accounting had ever been made to him. He asks that an accounting be had, and that he have judgment against appellee for his proper share in the fruits of the partnership. The appellee's answer admits

the contract of partnership, and that the parties continued to do business thereunder until May 18, 1901, at which date he alleges it was dissolved in pursuance to the terms of said contract, the plaintiff retiring from said partnership.

The second count of the answer charges that plaintiff neglected the partnership business and gave his time largely to the conduct of his own private affairs and those of his family relatives, and that the time thus lost by him during the last six years of the partnership was reasonably worth $2,000 per year, for which allowance should be made in the accounting.

The third count of the answer alleges that during said last-mentioned period the plaintiff had earned large sums of money in business dealings and transactions and in services rendered for others, with which earnings and profits he should be charged in the accounting.

The fourth count of the answer repeats the charge that plaintiff neglected the business of the firm, and alleges that by reason thereof defendant was compelled to perform and did perform work and service beyond what would have been required of him had plaintiff done his full duty under the contract, and that his extra or additional service so performed was reasonably worth $12,000. At the close of the trial appellee amended his answer by alleging that prior to the making of the written contract, and as a part consideration therefor, plaintiff orally agreed to devote his entire time and energies to the business and to the study and practice of law, but in fact, after said partnership had been performed, he neglected the firm business, and gave his attention and time to his private business to such extent that the value of his service to the firm was greatly diminished, and that on or about November 1, 1899, the parties entered into an agreement by which, in consideration of his failure to give his time and attention to the firm business, plaintiff was to make no claim to any partnership interest in the fees or money earned by the defendant after May 15, 1894.

All of these allegations are denied by the plaintiff.

I. The first pertinent inquiry relates to the time when the partnership relation between the appellant and the appellee ceased to exist. As to this there is but slight question in the pleadings; the appellant alleging, as we have seen, the date of the dissolution to have been June 1, 1901, while the appellee asserts it to have taken place on May 18, 1901. This difference of about two weeks is not very material except as it affects certain fees earned and possibly certain collections made during that period. The amendment to the answer does not in terms or by necessary implication withdraw the previous allegation as to the date of the dissolution, nor does it allege that a dissolution took place prior to May 18, 1901, but says, in effect, that by express agreement or tacit understanding of the parties after May 15, 1894, appellant was to receive nothing from the firm business except what he himself earned, and that he did in fact receive and retain to his own use all of that part of the earnings and income to which he was entitled. In other words, the amendment sets up, not a dissolution of the partnership prior to May 18, 1901, but a modification of the contract between them by which appellant was no longer entitled to receive a one-third share of the combined earnings. It is true that in his testimony on the trial appellee says that from 1897 to 1901 he and the appellant " did not have very much in common " in business, and " that the partnership was practically dissolved then or before, . . . not, perhaps, as a matter of law, but for all practical purposes." Yet in the same connection he says: " The partnership continued until the year 1901. During that period I gave no notice of dissolution. I think there were a great many suggestions of dissolution in the manner in which the business was carried on. I do not think I ever gave him notice in so many words of the dissolution of the partnership, or that it would have to come to an end until May 18, 1901.

1. PARTNERSHIP: modification of contract: dissolution: evidence.

. . . I never told or suggested to him that I considered the partnership was at an end until the time I have just mentioned." Still later he says that on May 18, 1901, a disagreement arose between them concerning their proportionate interests in the profits in a land deal in which they were engaged; the appellant claiming one-half, and the appellee denying his right to more than one-third. On hearing the appellant's claim appellee, according to his own statement, responded: " This partnership must come to an end, and come to an end now" — an ultimatum he would not have been likely to have announced had he understood that a dissolution had taken place several years before. After some further words between them appellee handed to the appellant a check for $1,500, saying, according to his version of the conversation: " I will draw this check to you for $1,500, with the distinct understanding that $500 of it is paid to you upon your retiring from the firm under the terms in the last clause of our articles of agreement which provides for your retiring." To this proposition he says appellant assented and took the check. On his part appellant alleges that the talk or negotiation for a dissolution began about March 4, 1901, when he proposed to retire, and appellee assented thereto, and it was agreed that the withdrawal and dissolution should become effective on June 1, 1901; the appellee to repay the $500 which had been paid by appellant for his interest in the business, also one-third of the cost of additions made to the library, and to make a settlement with appellant on the date named. Appellant claims to have remained in the office doing what he could to wind up the partnership affairs until June 1, 1901, when he retired. The evidence, therefore, is in full accord with the concession in the pleadings that the partnership continued until at least May 18, 1901. We have referred thus particularly to the testimony of the principal witnesses only because there is in argument some attempt to depart from the issues and prove

a dissolution in fact or in effect some years prior to that date, a proposition having little or no substantial support.

II. Having found that the partnership was not dissolved prior to May 18, 1901, we next inquire whether the parties to the contract ever agreed upon any change in its terms and conditions. The burden is upon the appellee to establish such change by at least a fair preponderance of the evidence, and this, we are quite clear, he has not done. Certain it is that no such agreement exists in writing. Nor is there any attempt to show such an oral agreement except as it is sought to be drawn from a conversation which took place between the parties under the following circumstances: During or prior to the year 1899 the parties, as already stated, made an investment in a tract of land which seems not to have been closed out until 1901. At some time while this enterprise was still in hand, the subject of their proportionate interests therein became a matter of dispute between them. Respecting the date of the origin of this controversy there is some discrepancy in the record; but, in our view of its nature and effect, the matter of date is not of controlling importance. In the course of the talk concerning this investment appellant spoke of his " half " interest in the property. This remark was the opening of a short and somewhat heated discussion, which the appellee relates as follows: Now this was the first intimation of any sort or kind from Mr. Roth that he claimed a half interest in the matter, or the first knowledge or thought that I had that he claimed more than a third interest. I said to Mr. Roth: " What do you mean by your half of the Tarr land ? " " Why," he says, " I mean that I am entitled to half of that land. That was not a partnership matter. And I am entitled to it, and am going to have it." I said: " You are not going to have it, and I don't understand by what process of reasoning you arrive at the conclusion that you are entitled to it as a matter of law or as a matter of right, and especially under the con-

*2. Same: modification of contract: evidence.*

ditions as they have existed since you were married." I
says: "You haven't given your attention to the law busi-
ness of Boies & Roth. You devoted your time almost ex-
clusively to your private business and of your wife and your
sister-in-law, and as a matter of fact you are not entitled to a
one-third of the money I have been earning all these years."
He says: "So far as your earnings are concerned, Mr.
Boies, I don't want them; but I am going to have half of that
Tarr land." "Well," I says, "you will not have half, and
so far as your deposit of that money is concerned it don't
amount to one-third of what I have paid out for it already."
Appellant emphatically denies having made the statement
thus attributed to him, but, conceding the appellee's version
to be correct, it falls far short of substituting a new term or
condition in the partnership contract. The chief subject-
matter of their discussion was not their partnership contract
or partnership rights, duties, or obligations, but related to a
single joint enterprise into which they had entered outside
the general scope of that contract. The reference to their
general partnership relations, if made as appellee says, was
of an incidental character. Giving his statement the most
liberal construction, there was no proposition to abandon or
modify the existing partnership agreement, and no meeting
of the minds of the parties upon any new basis of association.
The appellant's statement, if made, that he did not want
any of appellee's earnings, was entirely consistent with the
continued existence of the partnership agreement. The
"earnings" of each individual partner are neither more
nor less than his share in the earnings of the partnership
divided according to the terms of the contract, and the most
natural interpretation of the statement attributed to the ap-
pellant is that he wanted nothing more than he was legally
entitled to. That such was the manner in which it appealed
to the appellee's understanding is shown by his original an-
swer filed in this case, where he expressly admits the execu-
tion of the written contract of partnership, and that there-

under said firm did business from the date of said contract until the 18th day of May, 1901.

III.    It is next urged by the appellee that in any event the manner in which the business of the parties was carried on will justify the finding of an implied agreement that appellant should have no share in the earnings of the appellee after May 15th, 1894. It appears that appellant married on the date here named, and it is claimed by the appellee that appellant thereafter gave his time very largely to the management of his own property and that of his wife, and that his conduct with reference to the alleged partnership business was consistent only with the theory that he had and claimed no interest therein. The record affords no substantial support for this theory. Indeed it is not a little difficult to understand the nature of the relationship between the parties as contended for in appellee's brief. A partnership in which neither party has any interest in the labor or service which the other renders in the business for which they are associated together would be an anomaly unknown to law or equity. That a partnership did exist between these persons for years after the date mentioned is, as we have seen, not only conceded by the pleadings and by the appellee as a witnes on the stand, but the record is full of evidence that they continued during all of those years to hold themselves out to the world as partners, occupying the same office and using the same firm name.

3. SAME: interest of one partner in earnings of the other.

It is true that appellee, as the senior and more experienced member of the firm, conducted practically all of the trial business and such other business as required personal attention away from home, and as is quite usual where a lawyer in an established practice takes in a junior partner, lately admitted to the bar, it fell to the latter to keep the office and look after collections and correspondence and attend to the lesser matters which would be neglected or lost

4. SAME.

if the office were abandoned or closed whenever the senior partner was absent.   Appellee testifies that for nine months of the year he was away from home at least two-thirds of the time, and during the other three months he was not constantly at home, thus affording ample opportunity for service of very substantial value by the appellant.   This service he performed, in some degree, at least (whether efficient or otherwise we need not here consider), down to the spring of 1901, and we can discover in the history of their business and in the manner of its observance nothing which necessitates the conclusion that their written contract had been abandoned.

Some claim is also made in argument upon the oral agreements and understandings alleged to have been had between the parties prior to the making of the written contract. This evidence, if admissible at all, goes no further than to show that appellant, in entering the partnership, undertook and promised to the best of his ability to give his time, study, and service to the partnership business, but whether any such express agreement or understanding was or was not had, it adds nothing to the obligation to be implied from the contract as it is written.

Counsel further suggest that the conversation between the parties, to which reference has already been made as having taken place not earlier than November, 1899, estops **5. SAME: estoppel.** the plaintiff to claim any share in the income arising from the services rendered by appellee after May 15, 1894.   We discover no element of estoppel in the matter here referred to.   Nor is an estoppel pleaded.

IV.   Having concluded that the partnership continued undissolved and unchanged by any subsequent agreement of the parties from its inception until May **6. ACCOUNTING BETWEEN PARTNERS: extra compensation for services.** 18, 1901, the main question left for our consideration has reference to the matter of accounting.   Preliminary to this it is proper to notice the claim of the appellee that he be credited for

alleged extra services rendered by him in and about the
partnership business, and that appellant be charged with time
lost to the partnership in caring for the property of his wife
and other family relatives.   It is an elementary proposition
in the law of partnership that in the absence of an agree-
ment to the contrary each member of the firm assumes the
duty of giving to its business all of his time, skill, and
ability, so far at least as the same is reasonably necessary to
the success of the common enterprise.   For this service his
share of the profits is his only compensation.   Story on Part-
nership, sections 182, 331; *Caldwell v. Leiber,* 7 Paige Ch.
(N. Y.) 483; *Little v. Caldwell,* 101 Cal. 560 (36 Pac. 107,
40 Am. St. Rep. 89); *Porter v. Long,* 124 Mich. 592 (83
N. W. 1021).   The contract in this case makes no provision
for payment for extra services save as the same was to be
compensated by the larger share in the profits.   The in-
equality of the parties in the matter of experience and train-
ing was recognized by them, and they agreed upon an unequal
division of the partnership income; the appellee being en-
titled to receive therefrom two dollars for every one received
by the appellant.   Possibly events proved that even this ad-
vantage was not sufficiently great to equalize the earning
capacity of the partners; but no definite term or period for
the continuance of their association had been fixed, and it
was open to the appellee to put an end thereto at any time,
had he chosen so to do.   Taking his own statement as a
witness, more than nine years had passed after the date of
the contract before he complained to appellant that the latter
was not doing his share of the work, and not until nearly
eleven years passed did he declare to the appellant " this
partnership must end."   The mere fact, therefore, that ap-
pellee did more of the partnership work than appellant, or
that his labors were of more valuable or profitable character,
is not sufficient ground upon which to base a demand for a
higher share of the income than is provided for in the con-
tract.   It may be admitted that the general rule which denies

to partners extra compensation for services to the firm will not prevail where the services or the circumstances under which they are rendered are such as to fairly imply an agreement therefor. *Levi v. Karrick,* 13 Iowa, 344. But we find nothing in this record to support such an implied agreement.

As we have already noted, the contract implies the inferiority in value of the appellant's services, and adjusts the division of income accordingly. As the experienced member of the firm, appellee took upon himself, as both parties apparently expected him to do, the leadership of the firm business, the control and management of its most · important affairs, and, as is usually the case in instances of this kind, the position of the younger member became largely that of collector, clerk, and office keeper. But in all this there was at no time prior to November, 1899, any , suggestion by either person to the other that the agreed ratio of division of the income was not satisfactory. Appellee says that during this time he did not think appellant entitled to one-third of the earnings of the firm, and did not think he would demand it, but the subject was not mentioned, and he does not claim himself to have then had any very definite idea as to just what appellant's rights in the firm were. His present contention that appellant should have nothing in excess of the receipts from the collections and office business, and that he himself should have all of the income arising more directly from his own services since 1894, does not appear to have then been formulated, for he concedes that on several occasions from 1894 to 1901 he paid over to appellant sums ranging from $100 to $1,000. He does not claim that these were loans, but says that he expected appellant to be charged therewith in settling up their partnership business, and we think this conduct is explicable only on the theory of appellee's recognition of appellant's right to share in the general income of the firm. The force of this conclusion is emphasized by the fact that none of these pay-

ments except the last one, which was made at or about the time of the dissolution, was accompanied by any protest or suggestion or complaint that appellant was not entitled to share the income on the basis of the original contract. The firm kept no cash drawer, and at all times, both before and after the date of appellant's marriage, the great bulk of the fees earned were paid to the appellee. No settlement or accounting was ever had between the parties, and instead of dividing the fees as they came in or at stated periods the practice seems to have been for the appellant to call upon the appellee and obtain such sums as he might need from time to time, and in this respect we discover no substantial difference in the methods pursued before and after the date of the appellant's marriage.

Allied to the claim thus considered is a further proposition that appellant should be charged with the value of time lost by him in the pursuit of his pri-

7. SAME: atten-
tion of one
partner to pri-
vate business.

vate business and with the value of services rendered by him to his wife and to his other relatives in caring for their property and investments. It is undoubtedly true that appellant gave some of his time to the care of the private business of himself and family. But both partners were thrifty and prosperous, and each had individual property and investments to which he gave some portion of his attention, though the time thus taken by the appellant more especially in the last two years of the partnership was probably in excess of that taken by the appellee. So, also, both of them indulged in an occasional vacation. The testimony as to lost time deals almost entirely in general statements and rounded estimates. Scarcely a specific instance of such loss is given, and nowhere is pointed out a specific instance of loss of business by reason of any negligence or inattention to the office. It is shown that the collection business of the firm fell off quite materially during the last few years of the partnership, but there is a failure of testimony to show that such

falling off is chargeable to any neglect of duty on part of either partner.   It is a matter of common knowledge that the period covered by the last few years of the partnership was one of unusual prosperity in Iowa, resulting in a greatly decreased volume of collections placed in the hands of lawyers for enforcement.   Some of the decrease in this line of business is also doubtless attributable to the enactment of the national bankruptcy act of 1898.   If the record showed to any reasonable degree of certainty that appellant's neglect of duty as a partner had subjected the partnership to any material loss or injury, a court of equity might well charge him therewith in the settlement, but the evidence upon which to base such finding is not in the record.   There are very few law firms in which the individual partners are not to a greater or less extent interested in other adventures having no connection whatever with the practice of their profession, and, unless these individual interests are permitted to so abstract the attention or absorb the time of the partner as to materially interrupt or interfere with his professional duties, he does no wrong to his associates.

This observation is likewise applicable to the further claim made by the appellee that in any event the value of the services rendered by appellant in caring for the property interests of his wife and relatives should 8. SAME. be accounted for to the firm.   Such services were not of a professional character, and his earnings therein were not partnership property.   This question was considered by the Illinois court in *Metcalfe v. Bradshaw*, 145 Ill. 124 (33 N. E. 1116, 36 Am. St. Rep. 478), where it is held that moneys received by one of a firm of lawyers for services as administrator of several estates were not partnership property.   The court says:  " The defendant by acting as executor or administrator engaged in no business or enterprise which can be regarded as in any sense in competition with his firm, or which involved the use for his own advantage of anything belong-

ing to the firm. True, by the copartnership articles he agreed to give his time, talents, and strength to the prosecution of the firm business, but it does not appear that he failed, by reason of the acceptance of those trusts, in the performance of his agreement in this respect. It is not shown that any firm business suffered for lack of attention on his part by reason of his performance of the duties of executor or administrator." Mr. Lindley, in his work on Partnership, 312, lays down the rule as follows: " Where a partner carries on a business not connected with or competing with that of the firm, his partners have no right to the profits he thereby makes, even if he has agreed not to carry on any separate business."

To make an entirely satisfactory accounting upon the record furnished us is not an easy matter. Neither party has attempted to state in a single comprehensive account all of the items of receipts and expenditures during the nearly eleven years of the firm's existence. Appellant has attempted to cover the entire business by stating the account in various condensed groups or schedules, and from a combination of these computes a balance in his favor of something over $11,000. Appellee's counsel content themselves with denying in whole or in part certain items of receipts and expenditures set forth in the appellant's schedules, and make a list of other items with which appellee should be credited. The trial court's judgment is accompanied by no findings of fact showing what items it allowed or disallowed. We regret that the parties did not see fit to have the books and accounts referred to some competent person for a complete and detailed statement of the same. With such a statement before us each disputed item and the effect of its allowance or rejection upon the general result could be readily seen, and the true balance determined with comparative ease. This court cannot attempt to go through books and accounts and build up in opposing columns of debt and credit every item of business in the whole history of an active partner-

ship extending over a long series of years. But a fair approximate to this result is within our reach. Plaintiff's schedules, taken together, exhibit, as he claims, the total amount of income and expenditures in the firm business from all sources during the period of partnership, while defendant, instead of disputing the account as an entirety, denies certain items in whole or in part, and demands certain credits not included in the appellant's showing. Following this lead the issues are narrowed down within practicable limits. The gross income of the firm during the period of its existence as shown by the appellant's schedules was $65,493.63, against which he allows a credit of expenditures on account of the firm of $8,267.25, leaving, according to his showing, net earnings subject to distribution between the partners of $57,226.38. This showing appellee insists is excessive, and we think that in some respects the objection is well taken. The items involved in this dispute are too numerous to be here discussed in detail. We shall confine our attention to those which, in our judgment, call for correction, and as to the others, will simply say that we think their correctness is demonstrated by the record. The following charges made by appellant to the appellee's account are not sufficiently supported by the evidence, and are therefore disallowed:

| | | | | | | |
|---|---|---|---|---|---|---|
| Amount paid | by | one | Severson | ............... | $119 | 50 |
| " | " | " | " Nurk | ................. | 29 | 00 |
| " | " | " | " Lowery | ................. | 75 | 00 |
| " | " | " | city of Sheldon | ............. | 104 | 15 |
| " | " | for | electric light | ............. | 108 | 00 |
| " | " | to | Clerk Martin | ............. | 135 | 00 |
| " | " | " | Clerk Armstrong | ........ | 30 | 00 |
| " | " | " | Heaphy | ............... | 45 | 00 |

— making a total of miscellaneous overcharges and omitted credits of $645.65, for which amount appellee should have due allowance. Appellee is also entitled to credit for expenses. Unfortunately he kept no record of these items,

which doubtless aggregate an important sum. Making the best estimate possible, we think his credit in this account should be increased $3,500.

At the date of the dissolution of the partnership, which for the purposes of the case we find to have been May 18, 1901, the firm had in hand a considerable amount of un-

9. SAME: dissolution: closing up of the business: extra compensation.

finished business, including several cases of importance. In some of these cases the work had been substantially completed, while others had not yet been brought to trial. Appellant claims that the entire fees received by the appellee in all cases on hand at that time must be accounted for, while appellee's position is that he is not liable to account for any part of such business. It is the undoubted general rule of the law of partnership that upon the dissolution of a firm each member is under obligation to perform what work may be necessary for closing out the business without other compensation than his share of the profits. *Denver v. Roane,* 99 U. S. 355 (25 L Ed. 476); *Smith v. Knight,* 88 Iowa, 257. The rule is subject, however, to frequent exceptions, and, where the circumstances are such as to render it equitable that compensation in wages or an increased apportionment of profits be awarded to one of the partners, the court will adjust the account accordingly. *Robinson v. Simmons,* 146 Mass. 167 (15 N. E. 558, 4 Am. St. Rep. 299); *Thayer v. Badger,* 171 Mass. 279 (50 N. E. 541); *Schenkl v. Dana,* 118 Mass. 236. The exception is especially proper, where the partnership is between lawyers, and the work of winding up its affairs is all cast upon one of them. In such cases the joint enterprise cannot be closed out by simply selling the partnership property, paying its debts, and dividing the remnant between the partners. The cases on hand must be followed through the courts and brought to completion, often with a large amount of labor and responsibility; and not infrequently the most valuable part of the service rendered the client is that which is performed after the dissolution. Un-

der such circumstances equity demands some ratable apportionment of profits to the active partner in excess of the original contract share. On the other hand, where the work in a case has been substantially performed before the dissolution, the fact that it had not been fully closed and the fees not collected until afterwards would not necessarily justify the remaining partner in demanding extra compensation. It is also to be remembered that business which has come to a firm has presumably been acquired upon the credit of the firm, and that fact, together with the preliminary work done, entitles the retiring partner to have the earnings in such business accounted for upon some equitable basis. The fees in the present case which call for an application of these rules are as follows:

| | |
|---|---:|
| For services to O'Brien county | $5,000 00 |
| For services to the Harker estate | 8,500 00 |
| For services to the Davidson estate | 5,000 00 |
| Collected from Royce | 4,652 52 |
| Collected from Burns | 200 00 |
| Collected from Reynolds | 250 00 |
| Collected from Minden & Hickey | 50 00 |
| Collected from Schelser | 800 00 |
| Collected from Kearney | 150 00 |
| Collected from Gould | 100 00 |

—all of which were collected by the appellee.

Of these items we think the fees in the case of Royce and Schelser had been substantially earned before the dissolution of the partnership, and that no deduction should be made therefrom for services after that date. As to the other items we are disposed to credit the appellee for services rendered after the dissolution of the partnership as follows:

| | |
|---|---:|
| Davidson estate | $1,000 00 |
| In the Harker estate | 1,000 00 |
| In the O'Brien county case | 2,500 00 |

| In the Burns case | 200 00 |
| In the Reynolds case | 150 00 |
| In the Minden & Hickey case | 50 00 |
| In the Kearney case | 100 00 |
| In the Gould case | 100 00 |

This allowance, added to the other items already enumerated, makes a total of $9,245.65, by which sum the net proceeds of the business is reduced to $47,980.73. From this sum appellee expended for addition to library and office furniture still on hand and undivided $1,064.36, leaving net balance for distribution of $46,918.47. Of this sum the appellant was entitled to receive by the terms of the partnership contract one-third, or $15,639.47. He has received in fact $7,628.90, leaving a balance his due from the partnership business in the hands of the appellee of $8,010.92.

In the foregoing computation we have taken no account of the rights of the parties growing out of their investment in the tract of land known in the record as the " Tarr Land." It is shown without controversy that the land was sold by the parties at a profit, and the matter in dispute relates principally to the proportionate share therein to which they are respectively entitled. The appellant demands one-half, and the appellee concedes to him but one-third. There appears to have been no express agreement between them upon this subject, and, while the transaction was perhaps one not ordinarily within the scope of the partnership business, the land came to them through negotiations with a client for whom they had foreclosed a mortgage upon the property, and the value of their professional services were applied as part payment of the purchase price, and we think the conclusion justified that the parties treated such purchase as a partnership investment, and that the profits therefrom should be divided in the same proportion as their professional earnings. Granting appellee, therefore, two-thirds of the profits arising from the land transaction,

it appears that a balance is due to him thereon from the appellant in the sum of $2,234.13.    Although this credit would not ordinarily be admissible in the settlement of their partnership accounts, no objection is raised thereto by either party, and it will tend to avoid further litigation by giving the appellee the benefit thereof in this case. . Taking this credit from the amount hereinbefore found due the appellant on account of the partnership business, there appears to be due from the appellee to the appellant the sum of $5,776.79, which he is entitled to recover herein.

As the record discloses that there is a large number of uncollected and unsettled accounts due the firm, and that some addition to the library and office equipment was made during the existence of the partnership, and no provision having been made therefor in the decree of the district court, it will be necessary that this cause be remanded for further proceedings in harmony with this opinion, and for the entry of a decree making final adjustment of the partnership rights and distribution of its assets.    The costs of this appeal will be taxed to the parties in equal shares.— *Modified* and *remanded.*

LADD, C. J., took no part.