GRACE KEITH CUNNINGHAM, *Executrix, etc. v.* J. J. MADDEN

(No. 7827)

Submitted May 15, 1934. Decided June 15, 1934.

*S. T. Spears,* for appellant.

*D. H. Hill Arnold, A. E. Fiorentino* and *Keith Cunningham,* for appellee.

KENNA, JUDGE:

This suit was brought in the circuit court of Randolph County by the executrix of A. M. Cunningham against J. J. Madden for the purpose of requiring an accounting of the law partnership of Cunningham and Madden that existed from January 5, 1925 to January 1, 1929. The articles of partnership were in writing and bore date as of the beginning of the firm arrangement, but the writing itself was not drawn until some time in the year 1927. In December, 1928, Mr. Cunningham was stricken with what proved afterwards to be a fatal illness. The firm was voluntarily dissolved as of January 1, 1929, but the terms of dissolution nowhere appear in the record before us. The articles of partnership are brief, and, perhaps, had best be set forth in full. They are as follows:

> "This Memorandum of Agreement, Made this
> the 5th day of January, 1925, between A. M.
> Cunningham and Joseph J. Madden, both prac-
> ticing Attorneys at Law and residing in the City
> of Elkins, Randolph County, West Virginia.

"In Consideration of mutual interests and profits to be derived therefrom, the said Attorneys, whose names are signed hereto, hereby form a partnership for the practice of the law under the firm name of Cunningham & Madden, to continue from year to year, or until dissolved by mutual consent of the parties hereto.

"All *receipt* by way of counsel fees or other business matters in connection with said partnership shall be divided, after current expenses are paid and deducted, whenever the same shall have been received, in the following proportions, to-wit: A. M. Cunningham shall receive Sixty per cent, (60%), and Joseph J. Madden shall receive Forty per cent, (40%).

"Provided, however, that this division of fees shall not apply to business of the said A. M. Cunningham heretofore in his hands, and in which business the said Joseph J. Madden agrees to assist and help whenever called upon to do so by the said A. M. Cunningham, and shall receive therefor such compensation as the said A. M. Cunningham may agree to pay him.

"Each of the parties hereto shall devote his whole time and attention to the business of said law firm, except when unable to do so on account of pressing business engagements or illness.

"All office fixtures, furniture and the Law Library now in said offices occupied by said firm are the property of A. M. Cunningham, except a Remington #12 typewriter, and such law books as may be marked with the name label of Joseph J. Madden.

"Witness our signatures hereto, signed in duplicate, this the 5th day of January, 1925.

A. M. CUNNINGHAM
(signed)
JOSEPH J. MADDEN.

Witness:
Mary Florentino."

The cause was referred to a commissioner in chancery. Upon the incoming of his report, after certain exceptions thereto had been sustained, a final decree was entered upon the report as modified. It is from this decree that the appellant, J. J. Madden, prosecutes this appeal. The

executrix of the estate of A. M. Cunningham assigns cross-error.

One assignment of error has to do with what is called the Strader fee of $1,050.00. The entire amount of this fee was treated by the trial court as a partnership asset, and of this, appellant complains. Mr. Madden was a commissioner in chancery in the circuit court of Randolph County and the fees that he derived from this position were customarily carried into the partnership assets under the terms of the articles of partnership. In respect of the Strader fee, there were two orders of reference, one during the life of the partnership, under which Mr. Madden contends that a very small part of his total work was done. Subsequent to the dissolution of the partnership on January 1, 1929, there was a supplemental order of reference under which Mr. Madden contends he did the bulk of his work. The trial court applied to this situation the familiar rule that a surviving partner must wind up the partnership business without additional compensation. *Leary* v. *Kelly,* 277 Pa. 217, 120 Atl. 817; *Harrah* v. *Dyer,* 180 Ind. 229, 102 N. E. 14, Ann. Cas. 1916 B, 868. We fully subscribe to this doctrine, but do not believe that it is applicable to this particular situation. What Mr. Madden did after the dissolution of the partnership, we believe, was not done in a winding up or liquidation of the partnership within the contemplation of this rule. The partner who performs material personal services, not in mere winding up, but in carrying on the unfinished business of the firm, is entitled to receive the reasonable worth of those services, the balance that they yield to be treated as partnership assets. We believe that this principle has been recognized by substantial authority. *Jones* v. *Marshall,* 24 Idaho 678, 135 Pac. 841; *Lamb* v. *Wilson,* 3 Neb. (Unof.) 496, 92 N. W. 167; *Roth* v. *Boies,* 139 Iowa 253, 115 N. W. 930; *Thayer* v. *Badger,* 171 Mass. 279, 50 N. E. 541. See also, *Denver* v. *Roane,* 99 U. S. 355, 25 L. Ed. 476; *Humphreys* v. *Hurtt,* (N. Y.) 20 Hun. 398. But was Mr. Madden's employment as commissioner in chancery subject to the partnership agreement so that after dissolution an un-

finished case in his hands is to be regarded as unfinished firm business? We think not. It is perfectly true that the emoluments of a public office may be carried into a partnership and may be considered in the adjustment of the firm's earnings in such manner as will hold the partner officially employed accountable to the firm for the time so spent. See *Shinn* v. *Shinn,* 78 W. Va. 44, 88 S. E. 610, L. R. A. 1916E, 618. This is not to say, however, that a public employment may be made the subject matter of a partnership. The partner not publicly employed, under such an arrangement gains no direct interest in the official employment, as was held in the *Shinn* case. We are of the opinion that while it was perfectly legal to carry the earnings of Mr. Madden into the firm, and to thus make him accountable to the firm for the time he spent on his work as commissioner in chancery, that upon the dissolution of the partnership there was no partnership interest in his employment as commissioner in chancery such as would make him accountable to the firm for his earnings at that employment after dissolution. It was not a firm employment in that sense. We believe, therefore, that in so far as the Strader fee is concerned such reasonable part thereof as was fairly earned during the partnership should be taken into the partnership assets, and that so much thereof as was earned after the dissolution of the partnership should be regarded as the individual property of Mr. Madden. While it is true that Mr. Madden could not arbitrarily make this division himself, the trial chancellor should divide the amount of the fee on the basis of carrying into the firm assets such reasonable amount as was earned before dissolution, allowing the balance to Mr. Madden. The decree is therefore reversed as to this item. This disposition eliminates the matter of expense accruing after dissolution in connection with this fee.

Another assignment of error was to the disposition of what may be called the Waddell Coal Company retainer. At the time of the forming of the partnership, the Waddell Coal Company was accustomed to paying Mr. Cun-

ningham $300.00 a year by way of general retainer. The articles of partnership clearly contemplate that Mr. Cunningham should have been privileged to retain this, and not required to treat it as partnership assets. The commissioner in chancery found that on account of the book entries made for the year 1926, which treated this matter, in his opinion, as partnership assets, the aggregate of this retainer for the years 1925, 1926, 1927, and 1928 should be so treated. We are of opinion that the commissioner in chancery placed too much importance upon the book entry in question, and this is particularly the case when it is considered that the partnership articles were reduced to writing in the year 1927, after the date of the book entry in question. By that writing, Mr. Cunningham was entitled to have this retainer individually. It seems to us, therefore, that we cannot say that the trial chancellor was wrong in overruling his commissioner on this point, and in holding that the Waddell Coal Company retainer should be treated as property of Mr. Cunningham, and not as a firm asset.

A matter of cross-assignment is the division of the partnership expenses, carried into the decree. The trial chancellor thought that the partnership expenses should be divided on the same basis as the net partnership income, charging against the Cunningham estate sixty per cent thereof, and against Mr. Madden forty per cent thereof. In our opinion, the partnership agreement itself clearly contemplates that the expenses of the firm should be deducted from the gross income, and that after such deduction, the remainder, or net income, should be divided sixty per cent to Mr. Cunningham and forty per cent to Mr. Madden. The division of partnership expenses should be determined by this method of calculation, and the decree of the trial chancellor corrected accordingly.

Another item cross-assigned as error is that the trial court allowed to Mr. Madden, as individual earnings, a certain fee called the Carnegie Coal Company fee. There is a good deal of conflict concerning this employment, but we think that the trial chancellor was justified in taking the view that the employment by the Carnegie Coal Com-

pany, during the existence of the partnership, was for the purpose of assisting in bringing a suit in chancery and drawing the bill of complaint therein, and that this employment was fully discharged and the fee therefor paid during the life of the partnership. After the partnership was dissolved, Mr. Madden was employed to assist in going ahead with the case. We believe that the evidence justifies treating this as a separate employment, and hence that the decree is to be affirmed as to this item.

Perhaps one of the most serious assignments of error by the appellant is that which embraces the point that a personal decree was rendered against him without making full provision for the partnership debts. At the time of the dissolution and at the time of the final decree, there were outstanding two small notes that had been received by the firm as fees, and had been discounted at banks and the proceeds treated as partnership assets. Of course, the liability upon these notes is merely contingent or secondary. There is nothing in the record to show that the makers are insolvent, or that for any other reason they may not be expected to be paid by the principal debtor. Nevertheless, it is the general rule that firm debts must at least be provided for before an accounting as between the partners themselves can be decreed. *Jones* v. *Rose*, 81 W. Va. 177, 94 S. E. 41. The amounts of these notes are comparatively small, but we feel that some account should be taken of them. Therefore, the trial chancellor in entering a final decree in accordance herewith, is directed to make some suitable provision concerning the settlement of this indebtedness.

*Affirmed in part; reversed in part; remanded.*